ENOCH MOORE *et al.*, Plaintiffs in Error, *v.* THE SCHOOL TRUSTEES OF TOWN. THREE, etc., Defendants in Error.

### ERROR TO CLAY.

The school trustees of townships are the proper parties to bring suit, in their corporate name, in relation to the school lands.

A decree will be examined and considered. in the Supreme Court, if it states the facts proved, and the points upon which it was rendered in the court below, although all the evidence is not set out in the record.

If the facts, or any of them, are controverted, either party may take a bill of exceptions.

Courts of equity will scrupulously examine the conduct of persons acting in fiduciary or trust capacities, to see that the property confided to their care is protected from waste.

THE defendants in error filed their bill in the Clay Circuit Court, praying to annul sale of certain lands in Sec. 16, sold by Moore, as school commissioner, to John L. Taylor, in February, 1854, and praying for injunction to restrain Taylor from waste.

The plaintiffs in error prosecute a writ of error, to reverse that decree.

The following matters appear in the bill:

In 1837, all of Sec. 16, T. 3 N., R. 8 E., was offered for sale, without the preliminary steps having been taken, and contrary to law; but only the SW. quarter of SW. quarter, was then sold; that the tracts were appraised at little over $1 per acre; that the lands thus remained till 1852 or 1853, when they became greatly enhanced in value by the location and work upon the O. & M. Railroad which crossed them; and that, at the filing of the bill, the lands were worth from $7 to $15 per acre. That in November, 1853, L. S. Hopkins, school commissioner, in pursuance of a petition for that purpose, directed the trustees to have a

re-survey and re-appraisment of said land, who failed to do so for want of a surveyor, etc.

That Taylor applied to Enoch Moore, school commissioner, in February, 1854, to purchase said lands at the appraisement of 1837 ; that Moore at first declined to sell, but afterwards, through the intimidations and importunities of Taylor, and after a treaty of some two weeks, Moore sold him the lands for the sum of $837, taking note, mortgage, etc., when said lands, in fact, were worth, and would have sold, at public sale, for from $5,000 to $6,000. Bill prays that the sale be annulled, and set aside as illegal, fraudulent and void—also for injunction to restrain Taylor from cutting timber, etc.

Taylor answers, and admits that, in 1837, the lands had been appraised and offered for sale ; denies that the proceedings therein were illegal, and avers they were according to law ; admits that the location of the O. & M. Railroad may have enhanced the value of the lands, but denies that the lands were worth the values claimed in the bill ; that most of said land was swampy, subject to annual overflows ; and, at the time of his purchase, there were government lands of equal value adjoining, subject to entry at $1.25 per acre ; denies that any petition was presented to Hopkins for re-appraisement, and that any such directions were given as charged in the bill ; denies all persuasions or importunities, but admits that Moore declined at first to sell him the land, until satisfied, from examination, that Taylor was entitled to purchase ; denies all fraud and collusion, and claims to be the legal and rightful owner of said land, and shows deeds for the same from the governor of the State ; denies all matters not expressly admitted.

Moore answers ; admits the sale, and maintains it was lawful and right. Denies all knowledge of any petition being presented to Hopkins for re-appraisment of said land ; admits that he delayed completing the sale to Taylor, until he had fully investigated the matter, and satisfied himself that it was his duty to do so ; denies all fraud or collusion, and denies all intimidations, importunities and persuasions, and avers that all he did was in good faith. Denies all matters not expressly admitted.

There was a general replication to answers, when cause was heard upon bill, answers, replication and evidence. A decree was rendered, which sets forth that, at the March term, 1855, the cause was heard on bill, answers, replications and written and oral testimony, and that the court found the following facts, to wit:

1st. *That said Sec. 16, having been partially surveyed and platted, according to the minor subdivisions, and appraised as the laws provided, was offered for sale in 1837, under the law*

*then existing*, and that only the SW. quarter of the SW. quarter was sold.

2nd. That at the time of the survey and appraisment, under the laws, they were appraised at various prices, from $1.25 to $3.00 per acre.

3rd. At that time the country was sparsely settled, and a large amount of public lands were subject to entry at $1.25 per acre.

4th. That in 1852, and subsequently, the O. & M. Railroad was located through said Sec. ; that the country had settled and improved to a marked extent, and the lands became greatly enhanced in value, being heavily timbered, and having a good mill site, and were worth from $2.50 to $15 per acre.

5th. That Luther S. Hopkins, at this time, was school commissioner, and the inhabitants of said township petitioned him to have a re-survey and re-appraisement of said land, which he directed them to have made.

6th. That steps were taken towards such end, but owing to disappointment was deferred.

7th. That shortly after such directions for re-surveying, Hopkins was succeeded as school commissioner by Moore.

8th. That Moore was aware of the condition of the land, and of its great value, living only seven or eight miles therefrom.

9th. That shortly after Moore came into office, Taylor, who was fully apprised of the situation of said land, survey and appraisement, as aforesaid, applied to purchase said land.

10th. That Moore refused to sell said land, but, upon being threatened with a prosecution by Taylor for neglect of duty as an officer, and after repeated arguments of said Taylor, that he was compelled by law to sell to him, and that, after continued importunity by Taylor, Moore sold him the land for $837, and caused it to be conveyed to him, taking note and mortgage.

11th. That at the time of such sale, the land was worth from $2,800 to $3,500.

12th. That during the treaty for purchase, Moore did not consult the plaintiffs or the agents for the inhabitants, nor any portion of the inhabitants : which were all the evidence before said court.

The decree then orders that the sale by Moore, and the conveyances of said land to Taylor, are illegal and fraudulent as to the inhabitants of said township No. 3 N., R. 8 E., and the same be taken to be void, etc. ; that the deeds be cancelled and annulled, and the record thereof be declared invalid ; that the notes and mortgage given by Taylor, be surrendered, etc.

The defendants (plaintiffs in error) specially excepted to the decree, and, among others, assigned the reason that the testi-

mony of the witnesses was not preserved in writing, and that the conclusions of the court, as set forth in the decree, were not warranted by the statements of the witnesses.

The plaintiffs in error assign the following grounds of error, for which they say the decree should be reversed :

The want of equity in the bill.

The insufficiency of the evidence to sustain the decree.

The omission to preserve the oral testimony, in proper form, to be examined and considered by this court.

The granting of relief to the complainants.

The insufficiency of the decree, being contrary to law.

A. KITCHELL, for Plaintiffs in Error.

C. H. CONSTABLE and W. H. UNDERWOOD, for Defendants in Error.

SKINNER, J. This was a bill in equity to set aside a sale of school lands, made by Moore, as school commissioner, to Taylor.

It is insisted that the trustees of schools of the township for whose use the land was held in trust by the State, for common school purposes, cannot sue ; but that the State alone can sue, or that she should in some manner be a party to the bill.

In equity, those having the beneficial interest in the subject matter and relief sought, are the proper parties to sue, although they may not have the legal title or interest therein. *Fry* v. *Bank of Illinois*, 5 Gil. R. 332; *Edwards* v. *Hill*, 11 Ill. R. 22; Story's Eq. Jur., sec. 1191. The land in question was held by the State in trust for the inhabitants of the township, and those inhabitants are the parties beneficially interested.

In the absence of statutory provision, they might invoke the aid of equity to protect the trust property.

The statute, however, so far as regards the purposes of this suit, transforms the mass of the inhabitants into a corporation, the head of which is the three trustees elected by them, directs that the business of the township be transacted by such trustees, and empowers them to sue in the corporate name of the " Trustees of Schools of Township," etc. Statute 1856, 1091.

The complainants, therefore, representing the inhabitants, the members of the corporation, are the proper parties to sue.

The State could not be made a party defendant, nor compelled to sue. Her sovereignty would protect her from being coërced to prosecute or defend. *Osborn* v. *U. S. Bank*, 9 Wheat. R. 738; *Webster* v. *French*, 11 Ill. R. 254.

It is also insisted that there is not sufficient evidence properly preserved in the record to justify the decree.

The decree states the *facts* proved, that is: that in 1837 the region where the land is situated was sparsely settled, and contained a large amount of public lands in market at $1.25 per acre; that at the same time the school section was surveyed, platted and offered at public sale, being appraised at from $1.25 to $3.00 per acre; that shortly prior to 1854, the time of the sale to Taylor, the lands, by reason of the settlement of the country and the building of a railroad through the section, had largely increased in value; that after this appreciation of value, the inhabitants of the township petitioned one Hopkins, the then school commissioner, for a re-survey, appraisement, and a sale of the lands; that steps for that purpose were taken, but delayed from inability to obtain a surveyor, and that shortly thereafter, and pending the attempted re-appraisement, Moore succeeded to the office of school commissioner; that Moore and Taylor well knew the change in the condition of the country, the situation and increased value of the land, and the circumstances under which the appraisement of 1837 was made; that Taylor, on Moore coming into office, applied to him to purchase the land at the appraisement of 1837, and Moore refused to sell at that appraisement; but, after continued importunities and threats of prosecutions by Taylor, and without consulting the inhabitants or trustees of the township, did sell him the entire section, excepting forty acres before sold, for $837, the land then being worth about $3,000.

The facts sustain the material allegations of the bill, and establish at least a constructive fraud, against which equity will relieve.

The school commissioner stood in a fiduciary relation to the parties in interest, being a mere agent created by the law, and empowered to sell for the benefit of the inhabitants of the township.

It may be that no actual fraud was intended by the school commissioner, and that, from ignorance or inexperience, he supposed he was compelled by law to sell at the appraisement of 1837, to any one who applied; and, indeed, it is probable that from misconception of his official duties, influenced by the threats and importunities of Taylor, he reluctantly made the sale. Yet, this was done without the knowledge, against the implied wishes of those in interest, pending measures for a re-appraisement, and at a bargain to Taylor, under the circumstances, unconscionable.

Courts of equity will scrupulously examine the conduct of persons acting in fiduciary or trust capacities, and protect the trust property from waste, whether it arise from the actual or constructive fraud of the trustee, acting with the party obtaining

the undue advantage, or from the fraud of the latter alone. *Thomas* v. *Sloo*, 15 Ill. R. 66 ; *Morris* v. *Thomas*, 17 Ill. R. 112; *Atwood* v. *Caldwell*, 12 Ill. R. 96 ; Story's Eq. Jur., secs. 331, 332, 333, 334, 335, and on.

The decree does not attempt to give the evidence in the words of the witnesses, but states the *facts* or *points* proved.

It would lead to burdensome prolixity to compel courts to literally set forth the evidence taken in open court, upon which decrees are based.

The record, except where the bill is taken for confessed, should in some manner contain and exhibit the facts proved essential to support the decree, but it is enough if the *facts* proved be stated, without giving a minute detail of the answers or statements of the witnesses on the stand. *Ward* v. *Owens*, 12 Ill. R. 283 ; *White* v. *Morrison*, 11 Ill. R. 361.

If, indeed, it becomes a question whether the statements made by the witnesses, and the circumstances developed, establish all the facts, or any particular fact in issue, either party may, by bill of exceptions, embody the words of the witnesses, and whatever may conduce to enlighten the mind upon the matter in controversy.

*Decree affirmed.*