JOHN GORDON et al.

v.

HENRY R. JOHNSON et al.

*Opinion filed June 21, 1900.*

1. VENDOR'S LIEN—*express vendor's lien is assignable.* A vendor's lien which is expressly reserved by the deed is in the nature of a mortgage, and is transferable, so that the assignee may enforce it in a court of equity.

2. PARTIES—*bill to enforce vendor's lien should be brought in name of real party in interest.* A bill to enforce a vendor's lien expressly reserved should not be filed in the name of one party for the use of another, but should be brought in the name of the beneficial party or the real party in interest.

3. SAME—*when bank is a necessary party to vendor's lien proceeding.* Where land in fact owned by a bank but held in the name of a director is conveyed with an express reservation of a vendor's lien for unpaid purchase money, the bank is a necessary party to a bill to enforce such lien, notwithstanding the deed was made by the director as grantor and the notes for the unpaid purchase money were made payable to him.

4. SAME—*the want of a necessary party may be availed of at any time.* Where the rights of parties not before the court are so connected with the subject matter that a final decree cannot be made without materially affecting their interests, the objection that they are not parties may be made at the hearing or on appeal or error.

5. MISTAKE—*money paid under a mistake of fact may be recovered—limitations.* Money paid under a mistake of fact to one who has no right to retain it may be recovered, and the Statute of Limitations does not run against the demand until the time the mistake was discovered.

6. SAME—*recovery may be had for anything received as money.* The rule permitting a recovery of money paid under a mistake of fact applies to anything received as money,—even to land which is received and acknowledged as money.

7. LACHES—*equity ordinarily follows the law as to defense of delay.* Laches is not a defense to a cross-bill seeking a release of a vendor's lien and the recovery of purchase money paid under a mistake of fact, where a suit at law to recover the money would not be barred by the Statute of Limitations.

8. SAME—*laches not imputed to one in possession of land.* Laches will not be imputed to complainant in a cross-bill for relief against a vendor's lien where he was in possession of the land in dispute.

9. EQUITY—*when cross-bill for relief may be filed.* A cross-bill for relief may be filed when the original bill is brought for the specific performance of a written contract which the defendant insists should be canceled.

10. SAME—*when set-off will be allowed in equity.* A set-off will ordinarily be allowed in. equity when the party seeking the benefit thereof can show some equitable ground for being protected against his adversary's demand.

*Gordon* v. *Johnson*, 79 Ill. App. 423, reversed.

WRIT OF ERROR to the Appellate Court for the Third District;—heard in that court on writ of error to the Circuit Court of Morgan county; the Hon. C. EPLER, Judge, presiding.

The original bill in this case was filed on March 19, 1894, and the amended bill was filed on July 12, 1894, by the defendant in error, Henry R. Johnson, against the plaintiff in error, John Gordon, and others hereinafter named, to enforce a vendor's lien upon 94 acres of land situated partly in Scott county and partly in Morgan county, said 94-acre tract having° been sold and conveyed by Johnson to John Gordon on August 23, 1890, by a deed of that date, which, in the body of it, expressly reserved a vendor's lien. Mary E. Gordon, the wife of John Gordon, the grantee in the deed, was made defendant. Elizabeth Stryker, who held a mortgage to secure $14,000.00, dated February 4, 1884, executed to her by John Gordon and his wife on that day upon said tract of 94 acres, and about 400 other acres of land located in said counties, and owned by said Gordon, was also made a party defendant to the original and amended bills. Certain children of John Gordon, to-wit: John B. Gordon, Frank T. Gordon, Harry C. Gordon, Virginia C. Vasey, and Lillie Agee, and one William Gordon, trustee,—to whom John Gordon had executed a deed of trust on November 16, 1883, conveying 160 acres of the land included in the Stryker mortgage, but not including said 94 acres, and providing therein that John Gordon should have the pos-

session of said land during his natural life, and that, after his death, the same should be conveyed in equal parts to his said six children,—were also made defendants to said bills.

Answers were filed to the original and amended bills by some of the defendants thereto, default was entered against some of the defendants, and a guardian *ad litem* was appointed for one of the defendants, who was a minor, and filed an answer for him. The answer of John Gordon set up the fact, that the title to the tract of 94 acres, and to other lands hereinafter mentioned, which had been conveyed to H. R. Johnson, was really held by Johnson in trust for the Jacksonville National Bank, and that said lands were, as matter of fact, owned by said bank, and not by said Johnson.

Mrs. Stryker filed her answer on June 12, 1895, setting up her mortgage, and on June 15, 1895, she filed a cross-bill asking for the foreclosure of her mortgage for $14,000.00, dated February 4, 1884, due in five years after date, drawing seven per cent interest, secured, together with the principal note, by five interest notes, each for $580.00, payable in one, two, three, four and five years after date. The Jacksonville National Bank was not made a party to the original bill, or the amended bill, or to the cross-bill filed by Mrs. Stryker.

John Gordon had been a member of the mercantile firm of John Gordon & Co., doing business in Linnville in Morgan county, and also a member of the mercantile firm of Loar & Gordon, doing business at Jacksonville in said county. He was indebted in large amounts to said bank, both individually, and as a member of said firms. On February 6, 1884, he paid to the bank out of the $14,000.00, borrowed from Mrs. Stryker, his individual indebtedness to the bank amounting to $8240.04, or thereabouts, but paid nothing upon the firm debts due to the bank. The proof tends to show that the balance of the $14,000.00 was deposited in said bank.

On July 5, 1895, John Gordon filed in the case a cross-bill against Henry Johnson, which was demurred to, and the demurrer was sustained. The cross-bill was then amended by leave of court, and a demurrer was filed to it as amended. The demurrer to the cross-bill as amended was sustained, and the cross-bill was dismissed. The Jacksonville National Bank, as well as H. R. Johnson, was made a defendant to the cross-bill.

The cross-bill filed on July 5, 1895, by John Gordon against the Jacksonville National Bank, and the defendant in error, H. R. Johnson, set up substantially the following facts:

On account of the indebtedness of the firms of John Gordon & Co. and Loar & Gordon to the bank, the bank, on February 22, 1886, sued out an attachment against John Gordon, and levied upon all the lands embraced in the mortgage to Mrs. Stryker, being about 500 acres, and including the 94 acres above mentioned, and also levied the .attachment writ upon $4000.00 worth of property belonging to John Gordon. A few days afterwards, to-wit: on March 10, 1886, Gordon settled this indebtedness to the bank by conveying the tract of 94 acres above mentioned, which was subject to the Stryker mortgage, to H. R. Johnson, and also by procuring Samuel W. Heaton, his brother-in-law, to convey to H. R. Johnson other lands, amounting to 284 acres, not embraced in the Stryker mortgage. The firm indebtedness to the bank, upon which the attachment suit had been brought, was thus settled by the conveyance to Johnson of the 378 acres of land above mentioned. Subsequently, on May 29, 1886, the bank entered up judgment in the attachment suit against John Gordon for $19,437.11.

The cross-bill filed by John Gordon charged, that the conveyances made to Johnson, who was a director of the bank and represented the bank in the settlement of the indebtedness, were made for the benefit of the bank; that the bank represented the firm indebtedness to itself to

be about $20,000.00, and took the 378 acres of land at the gross sum of $19,820.00; that, in consideration of the conveyances so made to Johnson, the bank promised to surrender to Gordon all the obligations it held against him, either individually or as a member of said firms, and to give him a receipt in full of all its demands against him; that he had not had his bank book balanced for a long time, and did not know the condition of his indebtedness, either individually, or his partnership indebtedness, and relied upon the statements of the bank in relation thereto; that the bank's agents misrepresented to him the amounts which he owed; that the notes were not presented at said settlement, and, although he often applied for them, as well as for a statement of his account, he was put off with excuses coupled with promises; that he did not succeed in getting his notes from the bank, and did not find out the error or mistake in the representations as to the amount of his indebtedness until November 21, 1892; that he then notified the bank of the error and demanded correction, which it refused to make; that, on August 23, 1890, when he bought back the tract of 94 acres from the bank, represented by Johnson, he had no knowledge of the mistake which had been made in March, 1886, when the settlement took place; that, after his discovery of the mistake in November, 1892, he refused to make any more payments to Johnson upon the purchase of the tract of 94 acres, which had been deeded to him by Johnson, and upon the purchase of which he had paid $2815.50 in cash, and given his notes for sums amounting altogether to $6862.50, said notes being due respectively on the first days of March in the years from 1892 to 1897 inclusive, the first note for $962.50 due March 1, 1892, having been paid; that he paid the bank, as rent for the said 94 acres, about $500.00 every year for five years up to March, 1891; that a correction of his account with the bank would show no indebtedness existing from him to the bank on account of the purchase of said 94 acres;

that the bank entered up judgment in the attachment suit in violation of its agreement of settlement, made on March 10, 1886; that, after said settlement, he deposited with said bank a note on one Elliott, which, in January, 1892, with interest, amounted to $1600.00, but that said bank refused to account to him for the proceeds of the collection of said Elliott note; that when he succeeded in getting his bank book and checks, he found sums charged to him which he never drew, and checks which he never signed, and knew nothing about; that the firm of John Gordon & Co. was dissolved, and Samuel W. Heaton, who with John Gordon was a member of that firm, agreed to pay all the debts which the firm owed, including its indebtedness to the bank; that a note for $4000.00, which Gordon had executed to the bank, was paid or discharged by Heaton, who, being responsible, gave his individual note for $4000.00 to the bank to be substituted in place of Gordon's note for $4000.00; that the note, so made by Heaton, was accepted by the bank in lieu of Gordon's note, but that the bank retained Gordon's note and added it in with interest to the amount of its indebtedness against Gordon without the knowledge of Gordon; that Gordon did not know of the transaction in regard to said note for $4000.00 until he succeeded in getting from the bank his notes held by the bank; that at the settlement Gordon was furnished with no items, by which the mistake in charging him with $4222.00, the amount of the principal and interest due upon the note for $4000.00, could be known; that the said sum of $4222.00 was, on March 10, 1886, erroneously paid to the bank by the conveyance of the lands aforesaid; that he, Gordon, did not learn, until long after that date, that Heaton had given his own note in lieu of Gordon's note; that Heaton was then and is now perfectly solvent. The cross-bill, as originally filed and as amended, prays for an accounting between the bank and the plaintiff in error, Gordon, and that the amount of indebtedness due from Gordon

to the bank be definitely ascertained, and that there be entered upon the records a full release of the vendor's lien sought to be enforced by the original and amended bills herein, as being a cloud upon the title of plaintiff in error, John Gordon, to said 94 acres.

The trust deed, executed on November 16, 1883, by John Gordon to William Gordon, trustee, was not filed for record until February 23, 1886, the day after the attachment writ in the suit by the bank was levied upon the property as above set forth.

On February 29, 1896, the court below entered a final decree. This decree found that there was due to Mrs. Stryker upon her mortgage $15,696.54, and that she was entitled to a reasonable solicitor's fee of $500.00. It also found, that there was due from John Gordon to Johnson the sum of $6350.38 on account of the purchase of said 94 acres, deeded by Gordon to Johnson August 23, 1890, and that Johnson was entitled to a vendor's lien for the amount so found to be due to him. The decree ordered the payments of the amounts, so found to be due to Mrs. Stryker and Johnson, and that, in default of the payments, the land should be sold by first offering the lands described in the Stryker mortgage, and not described in the trust deed to William Gordon, and not included in the deed of John Gordon and wife to Johnson, (the latter deed having been executed not only by John Gordon and wife, but by two sons of John Gordon, to-wit: John B. Gordon and Frank T. Gordon); the decree provided that, if the land last named should not be sold for sufficient to pay the amount due to Mrs. Stryker, then the 94 acres described in the deed of the defendant in error, Johnson, to the plaintiff in error, John Gordon, should be sold; and that, if the lands last named should not bring a sum sufficient to pay the amount due Mrs. Stryker and H. R. Johnson, then that the trust lands should be sold, and two-sevenths of the proceeds thereof should be applied to the payment of the debt found due from John Gordon

to Johnson, and that the remainder thereof should be brought into court. The decree also appointed one Gregory receiver of the 94 acres, and he was ordered to take possession of the same, and rent the same, and report to the court.

The decree thus entered was taken for review to the Appellate Court by writ of error, and the Appellate Court rendered a judgment affirming the decree. The present writ is prosecuted from said judgment of affirmance.

J. M. RIGGS, for plaintiffs in error:

The Jacksonville National Bank was the real owner of the notes secured by the lien sought to be enforced by the original bill, and should have been made complainant. *Frye* v. *Bank*, 5 Gilm. 332; *Winkelman* v. *Kiser*, 27 Ill. 21; *Elder* v. *Jones*, 85 id. 384; *Smith* v. *Brittenham*, 109 id. 540; 1 Daniell's Ch. Pr. (Perkins' ed.) 181, 184, 185; Story's Eq. Pl. (7th ed.) secs. 72, 201.

The bank, being the beneficial party, should have brought the original bill although the legal title to the subject matter was in Johnson. *Moore* v. *School Trustees*, 19 Ill. 83.

The objection that a necessary party is not in court may be taken at the hearing or on review upon appeal or error. *Knopf* v. *Real Estate Board*, 173 Ill. 196; *Prentice* v. *Kimball*, 19 id. 232.

Money paid under a misapprehension of the facts may be recovered back at law. *Bradford* v. *Chicago*, 25 Ill. 411; *Wolf* v. *Beaird*, 123 id. 585; Kerr on Fraud and Mistake, 415.

In regard to limitations *"equitas sequitur legem."* *Harris* v. *Mills*, 28 Ill. 44; *Cartwright* v. *McGown*, 121 id. 388; *Castner* v. *Walrod*, 83 id. 171.

MORRISON & WORTHINGTON, for defendants in error:

*Laches* is a good defense in this case. *Beech* v. *Shaw*, 57 Ill. 17; *Harris* v. *Cornell*, 80 id. 54; *Hall* v. *Fullerton*, 69 id. 448; *Williams* v. *Rhodes*, 81 id. 571; *Baker* v. *Cummings*, 169 U. S. 189; *Swift* v. *Yanaway*, 153 Ill. 206.

These cases show the rule to be that "there should be promptitude of action within a reasonable time." Nine years' delay, and three years of the delay after it is confessed that full knowledge of the supposed error became known, cannot be said to be "reasonable."

Where the facts show *laches*, and an attempt is made to account for or excuse the same, demurrer is proper. *Coryell* v. *Klehm*, 157 Ill. 371.

One may rescind for fraud, but he must act promptly on the discovery of the fraud. *Masson* v. *Boret*, 1 Denio, 69; *Hall* v. *Fullerton*, 69 Ill. 448.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

The bill in this case, as originally framed and as finally amended, is filed by the defendant in error, Johnson, against the plaintiff in error, John Gordon, to enforce a vendor's lien upon 94 acres of land, reserved in a deed of said 94 acres executed by Johnson to Gordon on August 23, 1890. The deed recites upon its face, that a vendor's lien is expressly reserved upon the lands therein described to be enforced in any court having jurisdiction in such a case. Upon the execution of the deed, John Gordon paid $2815.50 and gave his six notes for the balance of the purchase money. The first of these notes for $962.50, due March 1, 1892, was paid. Gordon refused to pay any of the other notes for the reasons set forth in the statement preceding this opinion. It is provided in each of the notes that, if any part of the sum shall remain unpaid for ninety days after it is due, then all of the notes not then paid shall immediately become due and collectible.

The 94 acres, which Johnson deeded to John Gordon on August 23, 1890, had, on March 10, 1886, been conveyed to Johnson in the settlement of the indebtedness due from Gordon to the Jacksonville National Bank. The evidence is quite clear, that Johnson himself had no real interest

in the land, but held the title for the bank, of which he was a director. The real party in interest is the bank, and not Johnson, although the bill is filed in the name of Johnson. The notes, given for the purchase money, were payable to the order of Johnson, but, as matter of fact, the bank is the real owner of the notes, and of the lien which this bill is filed to enforce. Johnson says in his testimony: "The 94-acre tract, conveyed to me, was valued at $90.00 per acre, and the amount was paid on the bank debt in the attachment suit; these conveyances were made to me for the use of the bank, and in settlement of the bank's claim against Gordon, and the same were applied as a credit on Gordon's debt; * * * I do not consider I have any interest in this 94 acres of land, only as I am interested in the bank; I have an interest in the bank, but no personal interest in this land; whatever money is derived from the sale of this land will go to the bank, and not to me."

Inasmuch as the Jacksonville National Bank was the real owner of the land deeded to John Gordon, and upon which a vendor's lien was reserved, and inasmuch as the bank is the equitable owner of the notes, given for the purchase money, which are sought to be enforced by these proceedings, the bank was a necessary party. The bill should have been filed in the name of the Jacksonville National Bank, either alone or in connection with H. R. Johnson.

Where there is a stipulation in a conveyance of land, reserving to the grantor a lien on the land conveyed as security for the unpaid purchase money, the vendor's lien exists by express reservation. Such a lien is different from the implied lien, which equity raises in favor of a vendor, who has parted with the legal title without payment. The lien for the unpaid purchase price, being expressly reserved, is conferred by the contract between the parties. It arises out of the express agreement of the parties. (28 Am. & Eng. Ency. of Law, pp. 184, 185).

When the lien is thus expressly reserved, it is in the nature of a mortgage, and in equity is treated as a mortgage. (*Robinson* v. *Appleton*, 124 Ill. 276).

The ordinary vendor's lien, as that term is used in the books, is the equitable right, which the vendor impliedly retains of subjecting the land sold to the payment of the purchase money. It arises from an implied agreement, existing between the vendor and vendee, that the former shall have a lien on the lands sold for the payment of the purchase money. It grows out of the implication of law, that the seller does not intend to release his claim on the land for the purchase money. The vendor's lien, thus arising by implication of law, is personal and can not be assigned. (*Keith* v. *Horner*, 32 Ill. 524; *Dayhuff* v. *Dayhuff*, 81 id. 499; *Small* v. *Stagg*, 95 id. 39; *Bonnell* v. *Holt*, 89 id. 71). But where the lien is expressly reserved in the deed and, so, arises out of the express contract of the parties, it is transferable, and the assignee may enforce it in a court of equity. (28 Am. & Eng. Ency. of Law, p. 190; *Carpenter* v. *Mitchell*, 54 Ill. 126; *Markoe* v. *Andras*, 67 id. 34; *Wright* v. *Troutman*, 81 id. 374; *Blaisdell* v. *Smith*, 3 Ill. App. 150). Such an express reservation of the lien in a deed amounts to more than an ordinary lien of the vendor. "It is a written contract that the land shall be burthened with the lien until the notes are paid. If not a mortgage, it approximates one more nearly than an ordinary vendor's lien. It declares the land to be in pledge for the payment of the purchase money. It has the same effect as if a written agreement had been entered into and signed by the parties, that there should be a lien on the land to secure the payment of the notes, and that the assignee of the notes should have the right to enforce it." (*Carpenter* v. *Mitchell*, 54 Ill. 126).

In the case at bar, Johnson held the legal title to the land and was the payee in the notes, but the bank was the equitable owner both of the land and of the notes, and hence could become the owner of the vendor's lien,

reserved in the deed, by assignment of the notes, or con-
veyance of the land to it by Johnson. It was not nec-
essary to use the name of Johnson alone to enforce the
vendor's lien, because, being expressly reserved in the
deed, the lien could be assigned to the bank.

It is well settled that, in equity, those, having a bene-
ficial interest in the subject matter and relief sought, are
the proper parties to sue, although they may not have
the legal title or interest therein. (*Moore* v. *School Trus-
tees*, 19 Ill. 83; *Frye* v. *Bank*, 5 Gilm. 332; *Winkelman* v. *Kiser*,
27 Ill. 21). The general rule is that, in suits respecting
the trust property brought either by or against the trus-
tees, the trustee is a necessary party because he holds
the legal interest. The beneficiary is a necessary party,
because he has the equitable and ultimate interest to be
affected by the decree. (*Dubs* v. *Egli*, 167 Ill. 514, and cases
cited). A bill in chancery to enforce a vendor's lien for
the unpaid purchase money should not be filed in the
name of one party for the use of another, but the suit
should be brought in the name of the beneficial party, or
of the real party in interest. (*Elder* v. *Jones*, 85 Ill. 384;
*Smith* v. *Brittenham*, 109 id. 540). In every suit in equity,
all persons having equitable rights in the subject of dis-
pute, as well as persons having legal rights therein, should
be made parties. (*Gerard* v. *Bates*, 124 Ill. 150; *Moore* v.
*Munn*, 69 id. 591; Story's Eq. Pl. sec. 207). The rule, as
applicable to foreclosures, has been thus stated: "All
persons who have the legal interest in the mortgage, as
well as those who have the equitable interest therein,
are necessary parties to a bill to foreclose." (Story's
Eq. Pl. sec. 201).

Inasmuch as an express lien to secure the notes given
for the purchase money was reserved in the deed exe-
cuted by Johnson to Gordon, and inasmuch as the enforce-
ment of such a lien is treated in equity as the foreclosure
of a mortgage, and inasmuch as, under the authorities
cited, the equitable and legal owners of a mortgage are

both necessary parties to a bill to foreclose, it necessarily follows that the Jacksonville National Bank was a necessary party to this suit. The bank, however, was no't made a party thereto in the₁ original or amended bill filed by Johnson, or in the cross-bill filed by Elizabeth Stryker, although attention was called to the beneficiary interest of the bank in the answers filed by the plaintiffs in error. The plaintiff in error, John Gordon, made the bank a party defendant to his cross-bill, but that bill, being demurred to, was dismissed, and thereafter the suit proceeded without the presence of the bank in court.

Where the rights of parties not before the court are intimately connected with the matter in dispute, so that a final decree cannot be made without materially affecting their interests, as in this case, the objection may be taken at the hearing, or on appeal, or on error. (*Prentice* v. *Kimball,* 19 Ill. 320; *Knopf* v. *Chicago Real Estate Board,* 173 id. 196).

In the case at bar, the rights of the Jacksonville National Bank were so involved as to make it a necessary party, and, as it is a necessary party, advantage may be taken of its absence from the suit at any time during the pendency thereof, either on appeal or error.

That the bank was a necessary party is evident from an examination of the cross-bill filed by the plaintiff in error, John Gordon, against the Jacksonville National Bank and the defendant in error, H. R. Johnson. We think that the court below erred in sustaining the demurrer to that bill. The bill shows that the plaintiff in error, John Gordon, and the two firms, in each of which he was a partner, had extended business transactions for many years with the Jacksonville National Bank. A settlement was had between Gordon and the bank of his indebtedness and of the indebtedness of the firms, of which he was a member, to the bank. But a mistake was made, according to the allegations of the cross-bill, which, by demurrer, were admitted to be true, in the amount of the

indebtedness due by Gordon and the firms in question to the bank. The details of the settlement in question, and the grounds, upon which it was arrived at, are set forth in the statement which precedes this opinion, and need not, therefore, be here repeated. The bill alleges that the mistake was not discovered until November 21, 1892. The original bill in this case for the enforcement of the vendor's lien was filed on March 19, 1894, and the cross-bill of Gordon against the bank and Johnson was filed on July 15, 1895. As we understand the argument of counsel, the main ground, upon which the demurrer to the cross-bill was sustained, was, that Gordon was guilty of *laches* in filing his cross-bill, inasmuch as it was not filed until nearly three years after his discovery of the mistake.

At law money paid under a mistake of fact may be recovered back. (*Wolf* v. *Beaird*, 123 Ill. 585; Kerr on Fraud and Mistake, p. 415). Where money is paid by a man under a mistake as to his right and his duty, which he was under no legal or moral obligation to pay, and where the recipient has no right in good conscience to retain it, it may be recovered back. (*Northrop's Exrs.* v. *Graves*, 19 Conn. 548). In such cases of fraud or mistake, the Statute of Limitations begins to run from the time of the discovery of such fraud or mistake, and not before. (*McIntosh* v. *Saunders*, 68 Ill. 128). The rule applies not only to money, but to anything which is received as money. Even land, when received and acknowledged as money, has been held to be sufficient to sustain an account for money had and received. (*Baltimore and Susquehanna Railroad Co.* v. *Faumce*, 6 Gill, 68). Here, the money or land, paid by Gordon under mistake towards the settlement of his indebtedness to the bank, could be recovered by him in an action at law at any time within five years from November 21, 1892, when the discovery of the mistake was made. As a general rule, courts of equity follow the law in allowing the defense of the Statute of Limitations. Where the Statute of Limitations would bar a matter at

law and the matter is litigated in chancery, the latter tribunal will follow the analogies of the law. (*Harris* v. *Mills*, 28 Ill. 44; *Castner* v. *Walrod*, 83 id. 171; *Cartwright* v. *McGown*, 121 id. 388). The cross-bill here was filed within less than three years after the discovery of the mistake, and, as the Statute of Limitations would not have been a good defense to a recovery at law, it could not be a good defense in equity. Of course, where it clearly appears that the money was voluntarily paid with full knowledge of the facts, it cannot be recovered back though paid under a mistake. (*Bank* v. *McGilvry*, 4 Gray, 518). In the case at bar, however, the land was not conveyed in payment of the debts due to the bank with full knowledge of all the facts in the case. In view of what has been said, it cannot be successfully contended that plaintiff in error, John Gordon, was guilty of *laches* in filing the cross-bill.

In addition to what has been said, the evidence shows that the plaintiff in error, John Gordon, was in possession of the 94 acres from March 10, 1886, up to the time of filing his cross-bill in July, 1895. The cross-bill prayed that there should be entered upon the records a full release of the vendor's lien, described in the bill, as being a cloud upon the cross-complainant's title. A cross-bill for relief may be filed when the original bill is brought for the specific performance of a written contract, which, the defendant at the same time insists, ought to be delivered up or canceled. (Story's Eq. Pl. sec. 391). In the case at bar, the bill is brought for the specific performance of a written contract for the sale of land as embodied in the deed, reserving a vendor's lien and describing notes for the unpaid purchase money; and the cross-complainant, John Gordon, one of the defendants below, insists that the contract reserving the lien should be canceled. It is well settled that *laches* cannot be imputed to the complainant in a bill, who is in possession of the property in controversy. The Statute of Limitations, or a rule of limitation in equity, does not run against the party in

possession of real estate, but only against him who is out of possession. (*Parker* v. *Shannon*, 137 Ill. 376). Here, for the reason that the plaintiff in error, John Gordon, was in possession of the property, his cross-bill is not demurrable upon the ground of *laches.*

The cross-bill should have been retained for the purpose of bringing into court the bank, which was the owner of the subject matter of the litigation, so that the true state of affairs could be ascertained in equity. The defendant in error, Johnson, representing the bank, came into a court of equity to enforce a lien for unpaid purchase money represented by notes given therefor. The cross-bill filed by the defendant, John Gordon, set up equities arising out of the subject matter of the original bill, which entitled him to affirmative relief. He could, therefore, as a matter of right, present such equity by way of cross-bill, and it was error to dismiss his cross-bill. He sought to set up therein a set-off of what the bank owed him on account of his alleged over-payment to the bank against the purchase money sought to be collected. It is true, that a court of equity will not allow such a set-off, unless the party seeking it can show some equitable ground for relief. The mere existence of cross demands is not sufficient, but a set-off is ordinarily allowed in equity, when the party seeking the benefit of it can show some equitable ground for being protected against his adversary's demand. (*Quick* v. *Lemon*, 105 Ill. 578; *Houston* v. *Maddux*, 179 id. 377).

For the errors in failing to make the Jacksonville National Bank a party to the proceeding, and in dismissing the cross-bill of the plaintiff in error, Gordon, the judgment of the Appellate Court and the decree of the circuit court are reversed, and the cause is remanded to the latter court for further proceedings in accordance with the views herein expressed.　　　*Reversed and remanded.*