(No. 1982—

ROSA PETERSEN, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed October 17, 1933.*
*Rehearing denied January 9, 1934.*

SAMUEL G. RAUTBORD, for claimant.

OTTO KERNER, Attorney General; CARL DIETZ, Assistant Attorney General, for respondent.

MR. JUSTICE LINSCOTT delivered the opinion of the court:

The claimant, Rosa Petersen, filed her declaration on September 9, 1932, stating that on July 24, 1932, the State of Illinois was conducting a military camp and training quarters, known as Camp Logan, situated on the shore of Lake Michigan, at or near Zion, in Lake County, Illinois, and at the time a detachment of the one hundred thirty-second (132nd) Illinois infantry was being quartered and stationed there, and it became and was the duty of the State to post and maintain look-outs in the vicinity of Camp Logan, to warn boats or water crafts rightfully on the waters of Lake Michigan of the danger of coming within the rifle range; that at the time in question, target practice was being held, firing in the direction of the Lake, and there were no guards, signs or buoys to inform any person or persons happening to be on the Lake of impending danger, and not regarding its duty in this behalf, the State so carelessly and negligently and with-

out regard for the safety of the plaintiff, conducted said target practice; that at the time and place, the claimant was riding in a boat on Lake Michigan, opposite to Camp Logan, at a distance of approximately one and one-half miles from shore, and was then and there in the exercise of due care and caution for her own safety.

The declaration also charges that the State, which is called the defendant in the declaration, did make an assault upon the plaintiff, and shot off certain fire arms then and there loaded with gun powder and leaden bullets, at and against her, and did shoot and wound her, and she became incapable of following and transacting her affairs and business, and necessarily laid out divers sums of money, and asks the sum of Ten Thousand Dollars ($10,000) as damages.

A statement of her actual expenses is attached to the declaration, totalling Six Hundred Eleven Dollars and Fifty Cents ($611.50), and the balance of the damages asked is for pain, suffering and mental anguish; the whole sum totalling Ten Thousand Dollars ($10,000).

It appears from the evidence that on the morning of July 24, 1932, at about 9:00 or 9:30 A. M., the claimant, Rosa Petersen, a resident of Evanston, Illinois, and employed as a stenographer, was a member of a Hiking Club, which club was on its way to Winthrop Harbor. There were twenty of them in the boat, and there were six other members of the party who went by auto. The boat was being operated by its owner, one Wellington Quirk, and was known as the Coast Guard type. It is thirty-six feet long and about six feet high from the water line. They left Waukegan about 9:30 going north. Camp Logan is north of Waukegan. There is a difference in the evidence as to how far from shore they travelled, but the evidence fairly shows that they were at least a mile or more from shore. When opposite Camp Logan bullets commenced to fall around them, and claimant was shot. The boat was brought around from the right and headed back towards Waukegan. The siren of the boat was sounded for from five to ten minutes. It was an electric siren. It took them something over an hour to get back to Waukegan. The claimant was placed in an automobile and taken to a hospital. Quirk, the owner of the boat, had been a member of the Yacht Club for a couple of years and had been an owner of boats for twenty years and navigated them himself. He was familiar

with Camp Logan and surrounding waters. It also appears from the evidence that Quirk knew of the existence of the Hydrographic system in Chicago, and knew of their reports which are issued daily during the summer months.

Just prior to the accident, Miss Petersen noticed bullets drop in the water quite a distance away, but just how far does not appear from her testimony. She was quite an outdoor person and familiar with boats. Some comment was had about their being rifle practice at Camp Logan. The claimant heard the owner of the boat state that they were having target practice at Camp Logan. The boat was then turned to the right or east and claimant stated that it seemed as if their boat had been made a target, because bullets were flying all around them, and claimant testified that none of them expected any danger at that time.

Claimant was struck in both legs; through the calf of her right leg and the left foot. She did not discover the wound in her right leg until afterwards. It appears that she was sitting in the back of the boat with her feet drawn under her when she was shot. The bullet entered the top of the foot over a metatarsal bone, took a course towards the sole of the foot and became turned completely around in its direction probably through glancing contact with the bone, according to the medical testimony. There were scars on her foot that may or may not be painful.

At the time of the accident, Edwin S. Hoops, a retired captain of the United States Army and assigned to the 131st Infantry of the Illinois National Guard for training purposes, was on duty. Camp Logan is a rifle range for troops of the State of Illinois and Wisconsin, mostly Illinois troops. The Illinois Guard used this range the whole season. In 1932 this range was used extensively from June 19th to October 15th. There are two firing points there, one in the south range and one in the north range. For this opinion, it is unnecessary to go into the details of these ranges. It is sufficient to state that the firing is made towards the Lake. The ranges are about 600 yards apart and parallel. About 10:30 all the targets were suddenly withdrawn and they received word from the man down in the pits that there was a boat approaching. The targets were supported on butts. When the targets were withdrawn the firing ceased. The firing on that date was at a range of 200 yards. The targets were back some 600 yards

from the Lake on the south range and about 200 yards back on the north range. After the bullets had passed through the targets there would be a danger zone at the lake caused by bullets ricocheting, from about five hundred to seven hundred yards. It appears from the evidence that the bullet that struck the complainant was fired from the south range. It appears from the evidence that the Hydrographic Bureau in Chicago, several weeks prior to the time of the injury, had given notice to the various Chambers of Commerce and the various Yacht Clubs that firing would be conducted at Camp Logan, and it is fair to presume that the owner of the boat either knew, or by the exercise of due care and caution should have known of the firing at Camp Logan.

There is some controversy whether bullets fired from a Springfield rifle would have reached the claimant were the boat a mile and one-half from shore, but nevertheless, the facts are that she was shot, and all indications point that she was shot from a bullet fired from a rifle used by the State troops.

Under the view that we take of the case, it will not be necessary to consider whether the claimant was in the exercise of due care and caution for her own safety at the time of the accident. There can be no question about the facts in this case, or the claimant's injury. That the State of Illinois has the unquestioned right to train and maintain a National Guard for the public welfare, none will deny.

It is well-settled that in organizing training and military camps, the State is exercising a governmental function and acting in its sovereign capacity. The State cannot be sued or made a party defendant in Courts of Record. (*Art. IV, Constitution of 1870; Moore* vs. *School Trustees of Town Three,* 19 Ill. 83.)

We do not find that the Supreme Court of this State has ever passed upon the question of whether or not the State is liable for the acts of its officers or agents. However, with reference to public involuntary *quasi* corporations, such as counties and townships, carrying out governmental functions designated to them by the State, the rule is well recognized and quite analogous to the liability of the State.

*Hedges* vs. *Madison County,* 6 Ill. 567.

*Hollenbeck* vs. *Winnebago County,* 95 Ill. 148.

*City of Chicago* vs. *Williams,* 182 Ill. 135.

This court has quoted the last mentioned case, in the case of *Morrissey* vs. *State*, 2 C. C. R. 354, as follows:

"Where acts are done by the officers of towns and cities in their public capacity in the discharge of duties imposed by the law for the public benefit and for the promotion and preservation of the public welfare, no private action lies unless the right to bring it is expressly conferred. It must be conceded in this case, that all lawful acts done by, or omissions of the Canal Commissioners, or their agents, are the acts and omissions of public officers, acting in their public capacities for which there can be no recovery in tort, and for wrongful acts of such officers there can certainly be no recovery because the doctrine of *respondeat superior* does not apply to the State, and it is not liable for malfeasance, misfeasance or negligence of its officers or agents in the absence of a statute creating such liability. *Ross* v. *State*, 1 C. of C. R. 175, and many other cases decided by this court, holding to the same rule.

"It is not contended by claimant that such statute exists, and this court has repeatedly held that the statute which creates this court does not increase or enlarge the liability of the State but provides only the forum, wherein claims may be adjudicated according to the principles of equity and justice, except as otherwise provided by law."

It is a well-established rule that the doctrine of *respondeat superior* does not apply to a State in the exercise of purely governmental functions. In the case of *Seymour* vs. *VanSlyck*, 8 Wend. 403; 422; *United States* vs. *Kirkpatrick*, 9 Wheat. 720, 723 and *Story on Agency*, 9th Ed. Sec. 319, p. 390, this doctrine is stated:

"The government itself is not responsible for the misfeasance, or wrongs, or negligences, or omissions of duty of the subordinate officers or agents employed in the public service; for it does not undertake to guarantee to any persons the fidelity of any of the officers or agents whom it employs; since that would involve it, in all its operations, in endless embarrassments and difficulties and losses, which would be subversive to the public interests; and, indeed, laches are never imputable to the government."

So far as we are able to ascertain, from 1877 when the Commission of Claims was established, down through the creation of the Court of Claims, to the present time, this forum for the adjudication of legal and equitable claims against the State of Illinois has consistently adhered to the general rule, that the doctrine of *respondeat superior* has no application to the State.

In *Hinchscliff* vs. *State*, 2 C. C. R. 159, it was held:

"It is . . . a well established rule in this and all other courts that the State is not liable for the negligence, torts, misfeasances or omissions of duty of its officers, agents or servants, for it does not guarantee the fidelity of the agents or officers it employs to carry on its governmental functions."

Many times since then this court has followed this rule. (See *Dannewitz* vs. *State*, 6 C. C. R. 142.)

Because of the constitutional provisions against suing the State, this court was established, but the statutes defining the jurisdiction of the Court of Claims does not increase or enlarge the liability of the State. No doubt the intention of the legislature in establishing the Court of Claims was only to provide a forum where claims could be adjudicated according to well recognized principles of law and equity, except as otherwise provided by Statute. (See *Morrissey* vs. *State*, 2 C. C. R. 254.)

This court said in *Ryan* vs. *State*, 4 C. C. R. 57 that Section four (4) of the Act generally defining the court's jurisdiction to hear claims against the State, does not increase or extend liability on the part of the State so as to permit an award not based upon well recognized principles of law or equity in the absence of a statute to the contrary, "however much such cases might appeal to the sympathies of the court."

As we view it, the infantry was performing a duty, at the time of this deplorable accident, imposed by the law for the public benefit and for the promotion and preservation of the public welfare, and their acts and omissions are the acts and omissions of public officers, acting in their public capacities, and for such acts there can be no recovery, because the doctrine of *respondeat superior* does not apply to the State, and the State is not liable for malfeasance, misfeasance or negligence of its officers or agents in the absence of a statute creating such liability.

The claim of the claimant, Rosa Petersen, therefore will be denied and case dismissed.