THOMAS J. ROBINSON *et al.*

*v.*

WILLIAM H. APPLETON *et al.*

*Filed at Ottawa March 26, 1888.*

1. SPECIFIC PERFORMANCE—*the substance rather than the form of the contract considered.* A court of equity, in considering a bill for specific performance, will not look to the form of the contract, but rather to the substance. It will regard a bond conditioned for the conveyance of land, the same as an article of agreement for the sale and purchase of the same, and will decree a specific performance of the condition, which will be treated as the agreement of the parties.

2. SAME—*mutuality of remedy as between vendor and purchaser, and the assignee of the latter.* A vendor may have a specific performance of a contract for the sale of land decreed against his vendee. The remedy is mutual, and may be availed of by either the vendor or the vendee. It lies in favor of the personal representatives of a deceased vendor, and against subsequent purchasers or assignees of the vendee taking with notice.

3. SAME—*remedy as against assignee of purchaser—its nature and extent.* The remedy by the vendor of land for specific performance, against the assignee of the vendee, is in the nature of a proceeding *in rem,* and no personal decree can be taken against the assignee for the purchase money, unless he has assumed its payment as a part of the price he agreed to pay.

4. SAME—*purchaser acquiring outstanding title—effect upon rights of vendor.* Where a purchaser of land takes an obligation for a quitclaim deed from his vendor, and is let into possession, neither he, nor one claiming under him, will be allowed to acquire an outstanding title, and require the vendor to take a decree for the sale, only, of the title he had at the time of the sale. In such case, it is proper to order a sale of the land generally, for the unpaid price.

5. VENDOR'S LIEN—*how it may arise—and its nature and extent.* It is not necessary that a vendor's lien shall be expressly reserved in a contract for the sale of land. It is implied by the law, in the absence of anything showing an intention to waive it. When expressly reserved, it is in the nature of a mortgage, and there is nothing left to implication. But the fact that a vendor retains the legal title in himself, and agrees to part with it only upon full payment of the purchase money, affords conclusive evidence of his intention to reserve his lien. When the price is paid, the vendee becomes the complete equitable owner, and the vendor *is simply* the trustee or naked holder of the legal title for the vendee.

6. A vendor's lien proper, in equity, arises in cases where the owner of land conveys the same by deed, and thus divests himself of the legal title, and all or some part of the purchase price remains unpaid. The vendor, in case of an executory contract for the sale of land, before conveyance, also has a lien for the unpaid price, and can not be divested of his legal title before payment. In the latter case, the vendee can not do anything to prejudice the vendor's legal title, except by paying the price according to the terms of the contract. The vendor's lien in such a case is not a secret one.

7. SAME—*waiver of lien—option to declare forfeiture.* A clause in a bond for a deed providing for the forfeiture of the contract, and all payments made thereon, in case of default in any other payments, will not operate as a waiver of the vendor's lien on the premises for the unpaid purchase money. Such clause of forfeiture is not a security independent of the land, and is intended for the benefit of the vendor, which he may enforce, or not, at his pleasure. Until a forfeiture is declared, the rights and liabilities of the parties remain the same as if such clause had not been inserted, and the vendor may still enforce payment. The vendee or his assignee can take no advantage of it.

8. CHANCERY—*retaining a cause for all purposes.* Where a court of equity has once acquired jurisdiction, it will retain the case until complete justice has been done, settling all questions incident to the principal relief sought. So on bill by a vendor for the specific performance of a contract for the sale of land, the court will take jurisdiction of the whole controversy, and may decree the payment of the purchase money, and enforce the vendor's lien for its payment, and thus prevent a multiplicity of suits.

APPEAL from the Appellate Court for the Second District;— heard in that court on appeal from the Circuit Court of Rock Island county; the Hon. A. A. SMITH, Judge, presiding.

This was a bill filed by William H. Appleton and William W. Appleton, executors of the last will of James E. Cooley, deceased, in the circuit court of Rock Island county, against David B. Sears, Thomas J. Robinson, John H. Wilson, the Rock River Navigation and Water Power Company, the Rock Island Watch Company, and others. The bill was filed July 23, 1883. The bill alleges, in substance, that on or about the first day of December, 1866, James E. Cooley, being in possession of and claiming to own certain tracts of land particularly described in the bonds hereafter recited, agreed to sell and convey unto David B. Sears, by quitclaim deed, all his

right, title and interest in and to the same, for $30,000, which Sears agreed to pay as in said bond stated, and that said Cooley on that day executed and delivered to Sears his certain bond for a deed to said premises, wherein he agreed, that on condition that said Sears should pay or cause to be paid to said Cooley, his heirs, etc., the said sum of $30,000, as therein provided, and pay all taxes and assessments on the premises, he (Cooley) should make, execute and deliver a good and sufficient quitclaim deed of said land, conveying all of his (said Cooley's) right, title and interest in and to the same, and all rights, title and interest of dower, homestead or otherwise, which his (said Cooley's) wife might have in and to the same, to the said Sears, his heirs, etc., forever, covenanting against all incumbrances done or suffered by said Cooley, as shown by the bond, a copy of which is attached to the bill as an exhibit; that Sears paid Cooley $5000 in hand, and to secure the balance of the purchase price gave said Cooley his five promissory notes, for $5000 each, bearing even date with the said bond, payable in four, five, six, seven, eight and nine years after date, with seven per cent interest, to be paid semi-annually in New York, all of which were paid except the two last falling due, and the interest thereon was paid up to May 1, 1876; that upon the execution and delivery of said bond and notes, said Sears entered into and took possession of said property and land, and the same has ever since been and now is in the possession of said Sears, or those claiming under him. The bill then shows the death of Cooley in 1882, and the probate of his last will and testament in the Surrogate's Court of New York, and the granting of letters testamentary to complainants, who were appointed executors in and by said will; that after making a bequest to his wife, in lieu of dower, etc., the testator devised all the rest of his estate, real and personal, wherever situated, to complainants, in trust for certain uses therein set forth, whereby the legal title of said unpaid notes became invested in them; that Cooley, in his lifetime, and

complainants, as such executors and devisees, have always been, and are now, ready and willing to perform said agreement for the sale and conveyance of said premises, upon payment of the residue of the purchase money, but that Sears has failed and refused to pay to Cooley, in his lifetime, or to complainants since his death; that after the probate of said will, and the issue of letters testamentary, the complainants, on June 18, 1883, tendered to said Sears a deed of conveyance of said premises, properly executed by them and by the widow of said testator, in accordance with the said title bond, together with the notes remaining unpaid, and demanded payment of the same, but that he refused to pay the same, or any part thereof, and complainants offer to bring such conveyance and notes into court, to be delivered up upon payment of the amount due, etc. The bill then alleges that the claims of the other defendants to said lands, and their rights therein, are subordinate to the right of complainants, and to their lien for the purchase money, showing that such other claimants entered into possession under said Sears. The bill prayed for an account of the amount of purchase money due, and that the same be declared a first lien upon the premises, and that Sears be required to specifically perform the said contract on his part, and that, in default of his paying the amount due, certain others of the defendants be enjoined from setting up their claims adversely to the complainants, and that said premises be sold, under the direction of the court, to satisfy the unpaid purchase money and costs, and that on such sale defendants be barred and foreclosed from asserting any title or right, save only the statutory right of redemption, etc.

The death of David B. Sears was suggested January 22, 1884, and his heirs made parties. Amendments were made to the original bill, and a demurrer to the same was overruled. The Rock River Navigation and Water Power Company, and certain other defendants, electing to stand by their demurrer, the bill was taken as confessed as to them and other defendants in

default. Thomas J. Robinson, John H. Wilson and the Rock Island Watch Company answered, setting up that Cooley had no title to sell, and claiming under other sources of title than through Cooley, and admitting that Sears had assigned to them said bond for a deed. Replication was filed, and on hearing, the court entered a decree as to these defendants, substantially as prayed for in the bill. The defendant Thomas J. Robinson, John H. Wilson, the Rock Island Watch Company, and the Rock Island Navigation and Water Power Company, prayed an appeal to the Appellate Court, which was allowed.

The condition of the bond from Cooley to Sears, bearing date November 1, 1866, recited, that whereas the said James E. Cooley has "this day, by this agreement, agreed to sell and convey, by quitclaim deed, as hereinafter provided, to said Sears, all my right, title and interest in and to the following described tracts of land and property, to-wit," (here follows the description,) "on condition that the said Sears shall pay, or cause to be paid, to me, the said Cooley, my heirs, executors, administrators or assigns, the sum of $30,000, as follows, to-wit: $5000 down, (the receipt whereof is hereby acknowledged,) $5000 in four years, $5000 in six years, $5000 in seven years, $5000 in eight years, and $5000 in nine years, respectively, from the date thereof, and seven per cent interest, payable semi-annually, in New York, for which said last named five several payments the said Sears has given his five several promissory notes, each bearing date herewith, the said Sears having the right to pay the full amount named in said notes, and interest to the time of payment, at any time he may see fit to do so, and thus perform his part of the contract whether the notes shall have matured or not: Now, if I, the said James Ewing Cooley, on the payment of said notes, either before or after maturity, as the said Sears may elect, (together with any and all taxes and assessments upon the premises,) shall make, execute and deliver, and cause to be made, executed and delivered, a good and sufficient quitclaim deed of

said described land and property, conveying all my right, title and interest in and to the same, and all right, title and interest of dower, homestead, or otherwise, which my wife may have in and to the same, to the said Sears, his heirs, executors, administrators and assigns, forever, with covenant against all incumbrances and acts done or suffered by me, the said Cooley, then this obligation to be void, otherwise to remain in full force and effect. * * * And it is expressly understood, that in case of defalcation in the payment of the whole sum of said notes, and interest thereon, or any part thereof, to the time named and specified for their payment, then, in that case, all sums that have been previously paid on the same, and this obligation, shall be void and of no effect." The bond was recorded in the land records of Rock Island county, December 28, 1866.

Mr. Ira O. Wilkinson, and Messrs. Sweeney & Walker, for the appellants.

Mr. Henry Curtis, for the appellees.

Mr. Justice Shope delivered the opinion of the Court:

This was a bill filed by the executors of the last will of James E. Cooley, deceased, for the specific performance of a contract, made by their testator with David B. Sears, since deceased, for the sale of several tracts of land. The law is well settled, that the vendor may have a specific performance of a contract for the sale of land decreed against his vendee. (*Chambers* v. *Rowe*, 36 Ill. 171.) The remedy in cases of specific performance is mutual, so that either the vendor or vendee may avail of it. (Story's Eq. Jur. secs. 723, 789, 790, 796; *Andrews et al.* v. *Sullivan*, 2 Gilm. 332; *Burger et al.* v. *Potter et al.* 32 Ill. 66.) This remedy extends in favor of the personal representatives of a deceased vendor, (*Burger* v. *Potter*, *supra*,) and against subsequent purchasers or assignees of the

vendee, taking with notice. (Story's Eq. Jur. sec. 789 ; *Champion* v. *Brown*, 6 Johns. Ch. 398.) The proceeding in this case may be regarded as *in rem*, as against appellants, who took as assignees of the original purchaser. It is clear that the vendor or his personal representatives can not have a personal decree against appellants, unless they, in their purchase from the vendee, Sears, assumed the payment of the unpaid purchase money as part of the price they were to pay Sears for his interest in the land. As said in *Champion* v. *Brown, supra:* "The remedy by the vendor, against the assignee, may be said to be *in rem*, rather than *in personam*." And again : "The vendor can not make him personally liable for the purchase money, but the estate is liable, and if he be a purchaser with notice, it is the same thing whether the estate had or had not been actually conveyed by the vendor."

As appellants deny that a vendor's lien ever attached to the premises, it seems proper to notice some distinctions in the different cases in which the lien obtains which have not been noticed by appellants, and which have not always been clearly distinguished in the adjudged cases. The vendor's lien, proper, arises in cases where the owner of land conveys the same by deed, thus divesting himself of the legal title, and where some part or all of the purchase price remains unpaid. In such case, the grantor retains, in *equity*, a lien for the unpaid purchase money. The other case of lien arises or grows out of an executory contract for the sale of lands, whether by ordinary contract or bond for a deed, whatever may be its form, and when a part or all of the purchase money remains unpaid. It is said in Pomeroy's Equity Jurisprudence, section 1260 : "There is a plain distinction between the lien of a grantor after a conveyance, and the interest of the vendor before conveyance. The former is not a legal estate, but is a mere equitable charge on the land. It is not even, in strictness, an equitable lien, until declared and established by judicial decree. In the latter, although possession may have been delivered to the vendee,

and although, under the doctrine of conversion the vendee, may have acquired an equitable estate, yet the vendor retains the legal title, and the vendee can not prejudice that legal title, or do anything by which it shall be defeated, except by performing the very obligation on his part which the retention of such legal title was intended to secure,—namely, by paying the price according to the terms of the contract. To call this complete legal title a lien, is certainly a misnomer. In case of a conveyance, the grantor has a lien, but no title. In case of a contract for sale before conveyance, the vendor has the legal title, and has no need of any lien. His title is a more efficient security, since the vendee can not defeat it by any act or transfer, even to or with a *bona fide* purchaser." See, also, *Vail* v. *Drexel,* 9 Bradw. 439; *McCaslin* v. *State,* 44 Ind. 151; *Pitts* v. *Parker,* 44 Miss. 247; *Driver* v. *Hudsputh,* 16 Ala. 348; *Sparks* v. *Hess,* 15 Cal. 186; *Church* v. *Smith,* 39 Wis. 492; *Reece* v. *Birts,* 39 Ga. 565.

Sears having but an equitable title, by his conveyance or assignment of Cooley's bond for a deed could not pass any other or better title than he possessed, and appellants, taking only the equitable title of Sears, took the same subject to all the rights and equities existing against him in favor of Cooley. The retention of the legal title by Cooley was notice to purchasers of his vendee, of Cooley's rights. The bond under which Sears entered and acquired possession, was duly recorded prior to the purchase of appellants from Sears, and this was notice that Sears held an equitable title only, which was liable to be divested by Cooley upon the non-performance of the condition of his bond. The security of Cooley for his purchase money was in no sense a secret lien, as in the case of an absolute conveyance of the property. Therefore, the argument of appellants, that the secret lien of a vendor after conveyance is not favored, can have no application here.

When a court of equity has once acquired jurisdiction, it will retain the case until complete justice has been done,

settling all questions incident to the principal relief sought. (Story's Eq. secs. 66-74, 796; Pomeroy's Eq. 237.)   On a bill by the vendor for a specific performance of a contract for the sale of land, the court will take jurisdiction of the whole controversy, and may decree the payment of the purchase money, and enforce the vendor's lien for its payment, and thus prevent a multiplicity of suits. (Story's Eq. sec. 796.)   In such cases, the court will not look to the form in which the contract is written, but rather to the substance.   It will regard a bond conditioned for the conveyance of land, the same as an article of agreement for the sale and purchase of the same, and will decree a specific performance of the condition, which will be treated as the agreement of the parties. *Fitzpatrick* v. *Beatty*, 1 Gilm. 454; *Broadwell* v. *Broadwell*, id. 599.

It is insisted that Cooley failed to reserve a lien in his bond. It is not at all necessary that a lien shall be expressly reserved in a contract for the sale of land.   It is implied by law, in the absence of anything showing that it is intended to be waived.   When the lien is expressly reserved, it is in the nature of a mortgage,—is the result of contract, leaving no room for implication.   But the fact that a vendor retains the legal title in himself, and agrees to convey only upon full payment of the purchase money, affords conclusive evidence of his intention to reserve his lien.   The only purpose of retaining the title in the vendor is, that it may serve as a security for the payment of the purchase money, and when that is paid the vendee becomes the complete equitable owner, and the vendor simply the trustee or naked holder of the legal title for the vendee.

It is also insisted by appellants, with great earnestness, that the last clause of the bond, providing for the forfeiture of the contract, and all payments that have been made, if default is made in making full payment, shows Cooley's intention to waive his lien as vendor.   This is based on the doctrine that the taking of any other security for the purchase money is a

waiver of the implied vendor's lien. This doctrine has no application to this case. Cooley took no security independent of the land he had agreed to convey. It is true that the forfeiture clause is security for prompt payment, but it is, nevertheless, a security on the land sold. It was a clause inserted for his benefit, which he might enforce or not, at his pleasure. Where a contract for the sale of land provides, that if the purchaser shall fail to perform any of his covenants, the vendor shall have the right to declare the contract void, until the vendor avails himself of such clause, the rights and liabilities of the parties remain as if no such clause had been inserted, and the vendor may still enforce payment. The vendee or his assignee can take no advantage of it. *Mason* v. *Caldwell*, 5 Gilm. 196; *Chrisman* v. *Miller*, 21 Ill. 227.

It is also claimed that the *laches* of the vendor is fatal to the assertion of his rights in this case. If this was an ordinary equitable vendor's lien, there would be much force in the objection; but here the rights of Cooley to a lien were patent, both from the record and the bond which was assigned to appellants. They took the bond with full notice of the charge upon the land, and stand in no better position to invoke this defence than did Sears, even had they set it up by plea or answer. The defence is, we think, wholly unavailing.

The decree of the circuit court is also objected to, in that it decreed a sale of the land instead of annulling the contract and declaring it void, and it is also urged that if a decree of sale was proper at all, it should have directed the sale, only, of the right, title and interest which Sears derived from Cooley, instead of decreeing the sale of the land. From what has already been said, it will be seen that the decree of sale was properly entered. Also, while Cooley might have declared a forfeiture of the payments made, and declared the contract void for non-compliance with its conditions, he was under no obligation to do so. He had the right to keep the contract in force, and enforce a specific performance against the vendee.

He had the sole option of declaring the contract void for non-payment, and if he elected to keep it alive, the court had no power to interfere with such election. On the sale of land by bond or other executory contract, the lien of the vendor for the purchase money attaches to the land sold, and the purchaser may be compelled either to pay the purchase money, to surrender up the land, or to have it sold to pay the purchase price. Story's Eq. sec. 788.

As to the other objections, it will be seen that only a quitclaim deed was agreed to be made. Sears apparently was satisfied with Cooley's title, and if it was defective, he must be presumed to have taken that into consideration in making the purchase, and to have paid less therefor than he would otherwise have done. A purchaser may be willing to buy the title of one in possession which he knows to be defective, and take his chances of acquiring any outstanding title. At the time of this sale and purchase, Cooley was in possession of the land, claiming title thereto, and he and his grantor, Vandruff, had so been in possession for many years. It would seem to be inequitable to allow Sears, after his purchase, under which he obtained possession of valuable lands, to acquire an outstanding adverse title, and use it to defeat an action for the purchase money, having contracted for a quitclaim deed, only. After assuming the risk of the title he bargained for, he can not be allowed to make his vendor thus assume to warrant the title.

The recital in the bond is, that Cooley had agreed to sell and convey, by quitclaim deed, to Sears, all of his (Cooley's) right, title and interest to the lands therein described, on condition that Sears, his heirs, etc., should pay, or cause to be paid, five promissory notes, of $5000 each, at the time and manner therein stipulated. This condition, which shows the real undertaking, is, that on payment of the notes, Cooley shall "make, execute and deliver, or cause to be made, executed and delivered, a good and sufficient quitclaim deed of said described lands and property, conveying all my right, title and

interest in and to the same." The fact that Cooley was only willing to make a quitclaim deed of his right, title and interest in the premises, shows that he was not to be responsible for the sufficiency of the title thus sold. The purchaser taking such a deed, or contract for such a deed, can have no recourse on his vendor. Under such circumstances, if he buys another independent title, it will be for his own protection, and not of his vendor. This being so, he can not use such title to the disadvantage of his vendor, or assert it against him, but must perform his covenant and agreement to pay for the land, and a decree against him for a specific performance of the contract, and sale of the land to satisfy the unpaid purchase money, is proper, and his assignee, with notice, stands in the same situation. Even if Sears had a bond for a warranty deed, and had then been compelled to purchase in a superior title, he could not be permitted to rescind his contract of purchase without offering to surrender the possession and to cancel the bond. No such offer was made in this case. It would be inequitable to permit Sears or his assignees to retain possession of the land, which they acquired under his agreement to pay the stipulated price for Cooley's title, and repudiate the contract under which they entered.

The decree of the circuit court, as modified by the Appellate Court, is substantially correct, and appellants have no just cause of complaint. The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*