Frank B. McKennan et al.

v.

E. R. Mickelberry et al.

*Opinion filed July 17, 1907—Rehearing denied October 2, 1907.*

1. Contracts—*contract referred to in another as "of even date herewith" need not be in writing.* Where a contract for the exchange of properties between one person as party of the first part and two co-tenants as parties of the second part requires the party of the first part to make the conveyance of his property to the other parties according to a contract of division between them "of even date herewith," the words quoted do not necessarily imply the contract of division shall be in writing.

2. Same—*party to contract must perform regardless of controversy between other parties.* One who has agreed to exchange his store building and stock for a farm owned by two persons and to convey the building to one and the stock to a trustee for the other, according to a contract of division between them, is bound to convey such stock to the trustee in order to discharge his obligation, regardless of any controversy between the other two parties over the terms of their contract of division.

3. Specific performance—*when failure of abstract of title to show satisfaction of liens is not fatal.* Failure of the abstract of title to show satisfaction of certain liens, in accordance with a contract for the exchange of properties, cannot be taken advantage of to defeat specific performance by one who was a party to a fraudulent and collusive scheme whereby the possession of the abstract of title was secured and retained by his attorney to prevent the ascertainment and satisfaction of the liens, which were in fact satisfied, with the knowledge of the attorney, before the bill was filed.

4. Same—*equity will not permit party to take advantage of his own wrong.* Fraud and collusion between one of the second parties to a contract for the exchange of properties and the party of the first part and his attorney, whereby a fictitious trust deed was made by such second party to the attorney and recorded to cloud the title of the other party of the second part and furnish the party of the first part with an excuse for non-performance, will not defeat a bill for specific performance by the innocent party of the second part, and in such case the trust deed should be canceled and specific performance decreed.

5. Sᴀᴍᴇ—*effect as to liens of judgment creditors where specific performance is decreed.* Where judgment creditors of a proposed vendor acquire their liens with constructive notice of the prior contract for the exchange of property, if no valid defense against specific performance exists, the land should be discharged of such liens and specific performance should be decreed, but the property received in exchange for the land will be subject to the liens of the judgment creditors, whose rights will be protected by the court, which may, if necessary, appoint a receiver and order a sale of the property to satisfy the liens.

Wʀɪᴛ ᴏғ Eʀʀᴏʀ to the Circuit Court of McLean county; the Hon. C. D. Mʏᴇʀs, Judge, presiding.

This is a writ of error to the circuit court of McLean county to review a decree sustaining a demurrer to and dismissing a bill filed by Frank B. McKennan and Lawson D. Welch against E. R. Mickelberry and others, praying a decree for the specific performance of a contract and for other relief.

The bill, which was verified, was filed on June 16, 1906. It appears therefrom that plaintiff in error Frank B. McKennan and John Ziemens, one of the defendants in error, were the owners of a section and a half of land in Iroquois county, Illinois, subject to trust deeds securing the sum of $34,320, and other encumbrances amounting to about $5200. Defendant in error E. R. Mickelberry was the owner of an improved business property in the city of Clinton, DeWitt county, Illinois, and a valuable stock of merchandise located in and upon that property. The real estate in Clinton was subject to an encumbrance of $12,000. Mickelberry, on May 9, 1906, made a proposition, in writing, to exchange his said real and personal property in the city of Clinton, subject to the $12,000 encumbrance, for said lands in Iroquois, subject to the trust deeds thereon, for $34,320. McKennan and Ziemens accepted the proposition, and afterward arranged with the German American Bank of Bloomington, Illinois, for the money necessary to

pay the encumbrances on the Iroquois county land other than the trust deeds, and, in contemplation of the acceptance by them of Mickelberry's proposition, they on May 9, 1906, agreed between themselves to a division of the property to be acquired from Mickelberry, whereby Ziemens was to have the real estate subject to the encumbrance and McKennan the personal property, the latter to pay to Ziemens the sum of $3000, and Ziemens and McKennan each to pay one-half of the indebtedness for which they were jointly liable. The Clinton real estate should be conveyed by Mickelberry directly to Ziemens, and the title to the personal property was to be conveyed by a bill of sale to a trustee, for the use of McKennan, until McKennan should comply with his obligations in reference to payments by him as above mentioned. It was also agreed between McKennan and Ziemens that McKennan should take the management of the mercantile business, giving it his personal attention, and out of the net earnings pay all of his said obligations as rapidly as possible, and that the business should be continued in the building acquired from Mickelberry and Ziemens should receive a monthly rental of $150. McKennan and Ziemens selected plaintiff in error Lawson D. Welch as trustee, and he agreed to act in that capacity. This agreement will hereafter be refered to as the contract of division. It was further agreed between McKennan and Ziemens that as soon as they ascertained the amount of the total liabilities, to be settled with money which was to be furnished by the German American Bank, a written memorandum of their agreement and of the terms and conditions of the trust should be prepared and signed by them for reference and for the use of the trustee. On same day McKennan and Ziemens both signed a written acceptance of the proposition which had been made by Mickelberry, and thereafter Mickelberry as first party, and Ziemens and McKennan as the second party, entered into a contract bearing date May 9, 1906, (hereinafter referred to as the contract of May 9,) which provided

that the first party had sold and agreed to convey to Zie-
mens the Clinton real estate, with abstract of title showing
a good, clear, fee simple title, subject to the encumbrance of
$12,000, which realty was to be conveyed by Mickelberry to
Ziemens by deed of warranty, subject to the encumbrance,
with interest thereon from and after May 7, 1906. The
contract further recited that Mickelberry "has and does
hereby sell, and agree to transfer by a good and sufficient
bill of sale, free and clear of all claims and encumbrances of
any kind whatsoever, except as hereinafter mentioned, to
Lawson D. Welch, as trustee, for the said Frank B. Mc-
Kennan's use, as provided in a certain contract between the
said Frank B. McKennan and the said John Ziemens of even
date herewith," the stock of merchandise and other property
used in connection therewith, located in and upon the Clin-
ton real estate. In consideration of the foregoing, Ziemens
and McKennan agreed to convey the Iroquois land to Mick-
elberry by warranty deed, accompanied by an abstract show-
ing a good, clear, fee simple title, subject only to the deeds
of trust first hereinabove mentioned. The contract further
provided that all deeds and papers necessary to the proper
transfer of the properties should be executed within forty-
eight hours and delivered to the German American Bank,
to be held by it in escrow and delivered to the respective
parties in interest as soon as the titles were shown to be sat-
isfactory, as provided in the contract. The party of the first
part was to be established in the possession of the lands as
of the year 1906, and the second party and the trustee were
to be established in the possession of the properties, which
were to be conveyed to them as of the 7th day of May, 1906.
Three copies of the contract were to be executed, each of
which was to be considered as an original copy for all pur-
poses. This contract was signed in triplicate by Mickel-
berry, Ziemens and McKennan. All the deeds and title
papers necessary to make effective the transfers contem-
plated by the contract were duly executed, and, together

with one copy of the contract, were delivered to the bank within forty-eight hours after the signing of the contract.

It further appears from the bill that on May 10, 1906, it was agreed between McKennan and Mickelberry that the former should immediately take possession of the personal property at Clinton, but that one Savage, who had theretofore been the general manager of the business, should continue in that capacity and keep the books and control the funds derived from the business until such time as the contract was complied with by the presentation of evidence showing to the respective parties that the titles were as agreed upon, and under this arrangement McKennan took possession of the merchandise and so continued in such possession up to the time of the filing of the bill, but when the controversy hereinafter mentioned arose, Savage, under the direction of Mickelberry, refused longer to recognize McKennan's rights in the merchandise or his authority in the management and control of the business, and thereafter acted under the direction of Mickelberry, and the latter, operating through Savage, appropriated the proceeds of the business to his own use; that upon the deposit of the papers with the bank, McKennan within a short time caused an abstract of title to the Iroquois lands to be brought down to a date subsequent to May 9, 1906, and delivered the same to the bank; that this abstract showed a good, clear, fee simple title to the lands, subject only to the trust deeds and to the other liens, amounting to about $5200, which other liens were to be paid by the bank with money furnished by it; that between the time of the signing of the contract and the delivery to the bank of the abstract for the Iroquois lands, Mickelberry had failed to consummate a contemplated sale of those lands to a prospective buyer and thereupon became dissatisfied with his trade with Ziemens and McKennan, and that, acting through Charles I. Will, his attorney, who is one of the defendants in error, Mickelberry, by some means unknown to the complainants, secured the collusion and co-

operation of Ziemens for the purpose of defeating the final·
consummation of the exchange of properties contemplated
by the contract of May 9; that Will, representing Mick-
elberry, accompanied by Ziemens, upon the pretext that they
desired to ascertain the amount of money necessary to put
the title to the Iroquois lands in the condition in which it
must be to comply with the contract, obtained from the bank
the abstract of title to this land, and thereafter retained the
same against the will of McKennan and of the bank, there-
by rendering it impossible for the bank to ascertain and sat-
isfy the liens which the bank had agreed to remove; that
Mickelberry and Will, with full knowledge of the contract
and of the delivery of the title papers in escrow, and with
full knowledge of the arrangement made by Ziemens and
McKennan with the bank for the money necessary to pay
off the liens other than the trust deed, procured Ziemens and
wife, on May 29, 1906, to execute and deliver to Will, as
trustee, a deed of trust upon the Iroquois county lands to
secure the payment of a promissory note drawn to the order
of John Ziemens, signed and endorsed by him, for the sum
of $7500, and that said trust deed was recorded in the proper
office on May 29, 1906; that McKennan learned of the exe-
cution of the trust deed on the same day, and thereupon on
that day had a copy of the contract of May 9 recorded in the
recorder's office of Iroquois county, and on May 30, 1906,
had a copy of the same contract recorded in the recorder's
office in DeWitt county, Illinois; that said trust deed so
given by Ziemens to Will was and is a fraud perpetrated
upon the rights of McKennan, and that the same was done
with the knowledge and consent and approval of Mickel-
berry, with a fraudulent intention on the part of Ziemens,
Will and Mickelberry to defeat the ultimate consummation
of the contract for the exchange of properties; that in fur-
therance of that fraudulent purpose Mickelberry and Will
prepared, and on May 29, 1906, mailed to McKennan, a
letter in words and figures following:

228—30

"Bloomington, Illinois, *May 29, 1906.*

"*F. B. McKennan, Bloomington, Ills.*

"Dear Sir—I desire to call your attention to the agreement you, Mr. Ziemens and myself, and to say that it provides that the stock of merchandise shall be conveyed to L. D. Welch, trustee for you (McKennan) as per a written contract between you (McKennan) and Mr. Ziemens. The bill of sale executed by me was executed with the express understanding that this contract between you and Mr. Ziemens had been executed, and upon inquiry at the bank for the same I now find that this contract has not been delivered to the bank as per our agreement, and upon further inquiry find that the said contract has, in fact, never been executed. You will therefore please see that this contract referred to in our original contract between you and Mr. Ziemens is executed in accordance with the terms of our original contract within three days from this day, or contract will be declared void.

Yours truly,

E. R. Mickelberry."

—that theretofore, on the 23d day of May, 1906, McKennan had reduced to writing the agreement between himself and Ziemens in reference to the division of the property to be transferred by Mickelberry and in reference to the disbursements by the trustee of the funds to be received by him; that this agreement was prepared in duplicate; that McKennan signed both copies and delivered them to Ziemens, with a request that the latter sign them and return one copy to McKennan; that Ziemens, upon receipt of the copies of the contract, delivered the same to Will, and they have since been retained without objection; that at the time the letter of May 29, 1906, was sent to McKennan, Will had been in possession of the copies of the contract prepared by McKennan for several days, and that Will and Mickelberry, at the time of sending said notice, knew that McKennan could not procure Ziemens to sign that contract; that on June 4, 1906, Mickelberry, Will and Ziemens demanded of the bank the delivery to them of the contract and title papers then in escrow, but that the bank refused to deliver the same without the consent of McKennan; that two weeks prior

to June 8, 1906, all the liens upon the Iroquois county lands, other than the trust deeds, had been fully paid and released, and that Will, as attorney for Mickelberry, for two weeks prior to June 8, 1906, had enjoyed full opportunity to examine the abstract and had full knowledge of the satisfaction of the liens on the Iroquois county lands, other than the trust deeds; that on June 9, 1906, McKennan demanded of Mickelberry that he consummate the exchange of properties but that he refused to do so, and the bank refused to deliver any of the title papers until all the parties concerned should consent thereto; that on the 2d and 4th days of June, 1906, certain creditors of Ziemens and McKennan obtained judgments by confession upon promissory notes held by them against Ziemens and McKennan, and had execution issued thereon and placed in the hands of the sheriff of Iroquois for satisfaction; that the rights of the judgment creditors are subsequent to the rights of the parties to the contract of May 9 and to the rights of the parties to the deeds of conveyance in escrow in the bank; that the value of the properties which by the contract were to be conveyed to McKennan and Ziemens, over and above the amount of the encumbrance which was to be assumed, exceeded the value of the Iroquois lands after the amount of the trust deeds which Mickelberry was to assume had been deducted from that value.

The bill prays for an accounting of the sums realized by Mickelberry, through Savage or otherwise, from the conduct of the business in Clinton after May 6, 1906; for the appointment of a receiver to take charge of the personal property pending litigation; that the trust deed to Will be canceled and set aside; that the rights of the judgment creditors be determined to be subject to the rights of the parties to the contract of May 9 as such rights exist under that contract, and that the judgment creditors and the sheriff of Iroquois county be enjoined from further interference with the title to the Iroquois lands, and that Mickelberry,

Ziemens and the German American Bank be decreed to specifically perform the agreement of May 9, and for general relief.

To the bill Mickelberry, Ziemens, Will, the German American Bank of Bloomington, the judgment creditors and the sheriff of Iroquois county were made defendants. At the September term, 1906, of the McLean county circuit court, a general demurrer was interposed and sustained to the bill, whereupon plaintiffs in error, without notice to and without the knowledge of defendants in error, obtained leave to file an amended bill. No affidavit was filed showing necessity or excuse for amending the original, which, as has been heretofore stated, was verified. An amended bill was filed and later a motion to strike the same from the files was sustained, and the leave to amend was vacated and a decree was entered dismissing the original bill for the reason that no equity appeared on the face thereof, whereupon the complainants in the bill sued out from this court a writ of error.

It is assigned that the circuit court erred in sustaining the demurrer to the original bill, in striking the amended bill from the files, in vacating the leave to amend and in dismissing the original bill.

Louis FitzHenry, and Welty, Sterling & Whitmore, for plaintiffs in error:

It is just as much the duty of courts of equity to decree specific performance of contracts for the conveyance of land in proper cases as it is the duty of courts of law to award damages for breaches thereof. *McClure* v. *Otrich,* 118 Ill. 320; *Evans* v. *Gerry,* 174 id. 595; *Railroad Co.* v. *Brubaker,* 217 id. 462; *Fowler* v. *Fowler,* 204 id. 82.

Where a court of equity has once acquired jurisdiction it will retain the case until complete justice has been done, settling all questions incident to the principal relief sought. So on bill by a vendor for specific performance of a contract

for the sale of land the court will take jurisdiction of the whole controversy, and may decree the payment of the purchase money and enforce the vendor's lien for its payment, and thus prevent a multiplicity of suits. *Robinson* v. *Appleton,* 124 Ill. 276.

The general rule is, that any party who has an interest in the subject matter of the suit or a right to the thing sought therein may maintain a bill for specific performance. 20 Ency. of Pl. & Pr. 424.

It is not important in a court of equity whether a party appears as complainant or defendant, so long as he is actually before the court as a party to the suit. The decree may be moulded to meet the exigencies of the case. A decree may be rendered for or against one or more of several complainants and for or against one or more of several defendants. 15 Ency. of Pl. & Pr. 672, 673; *Cilly* v. *Patton,* 62 Fed. Rep. 498; *Parkham* v. *Aicardi,* 34 Ala. 393; *Piatt* v. *Oliver,* 19 Fed. Rep. 3; *McArthur* v. *Acott,* 113 U. S. 336.

Where a party, who by reason of interest should ordinarily be a complainant, refuses to permit himself to be so joined, or if for some other reason it is impracticable to join him as a co-complainant, he may be made a party defendant. 15 Ency. of Pl. & Pr. 674; *Smith* v. *Sackett,* 5 Gilm. 534; *Whitney* v. *Mayo,* 15 Ill. 252; *Jackson* v. *Norris,* 72 id. 364.

Where a trust attaches to land held in common, a subsequent partition by the holder of the legal title will give no new title but will only change the title to one in severalty, and the trust may be enforced against the part so set off in severalty. *Breit* v. *Yeaton,* 101 Ill. 242.

A court of equity will treat the title to land as being where the parties have contracted it shall be, and for that purpose will hold the vendor as trustee of the legal title for the benefit of the vendee, while the latter will be looked upon as trustee of the purchase money for the benefit of the vendor. *Sutherland* v. *Goodnow,* 108 Ill. 528; *Robinson* v. *Appleton,* 124 id. 276; *Fuller* v. *Bradley,* 160 id. 51.

A court of equity has jurisdiction to compel the delivery of deeds and other instruments to the persons legally entitled thereto, especially where the same are held in escrow. 16 Am. & Eng. Ency. of Law, 585, note 57.

A conveyance to a third party to evade specific performance may be set aside where the grantee had notice of such contract. 20 Ency. of Pl. & Pr. 480.

Specific performance of a contract to convey may be enforced against the alienee of a vendor who took with notice of the prior contract to convey. *Railway Co.* v. *Hay,* 119 Ill. 507; *Sterriker* v. *McBride,* 157 id. 70.

SIGMUND LIVINGSTON, and WILLIAM R. BACH, for defendant in error E. R. Mickelberry; CHARLES I. WILL, *pro se* and for defendant in error John Ziemens:

Specific performance of a contract for the sale of land is not a matter of right but is a matter for the sound legal discretion of the court; and the courts will be governed, to a great extent, by the facts and circumstances of each case. *Sutton* v. *Miller,* 219 Ill. 462; *Harrison* v. *Polar Star Lodge,* 116 id. 279; *McDonald* v. *Minnick,* 147 id. 651; *Beach* v. *Dyer,* 93 id. 295.

Even though a contract is reasonably fair, mutual and certain, yet the question whether it shall be specifically enforced rests in the sound discretion of the chancellor, governed by legal rules and principles. *Bauer* v. *Coal Co.* 209 Ill. 316.

A contract concerning personal property will not, in general, be specifically enforced. *Coal Co.* v. *Spellman,* 39 Ill. App. 630; *Pierce* v. *Plumb,* 74 id. 326.

A party demanding specific performance must show that he was always ready, willing and able to perform. *Morse* v. *Seibold,* 147 Ill. 318; *McCabe* v. *Crosier,* 69 id. 501.

A party seeking specific performance must show that he has performed the contract on his part to be performed. *Brink* v. *Steadman,* 70 Ill. 241.

It is an established rule of this court that a purchaser of land has no right to apply to a court of chancery to compel a conveyance, unless he has, previous to filing his bill, clothed himself with the right to demand a deed without any further thing to be done on his part. *Skeen* v. *Patterson*, 180 Ill. 289; *Cronk* v. *Trumble*, 66 id. 428.

Specific performance of a contract will not be enforced if it is anything that makes it unconscionable, from the change of circumstances or otherwise. *Sutton* v. *Miller*, 219 Ill. 462; *Taylor* v. *Merrill*, 55 id. 52; *Railway Co.* v. *East St. Louis*, 182 id. 433.

The obligations in the contract must be mutual, and unless it binds all the parties it will not be specifically enforced against any of them. *Krause* v. *Kraus*, 162 Ill. 328; *Winter* v. *Trainer*, 151 id. 191.

Every fact essential to plaintiff's title and right to maintain the bill and obtain the relief must be stated in the bill, otherwise the defect will be fatal. *Krause* v. *Kraus*, 162 Ill. 328; *Burgett* v. *Paxton*, 99 id. 288.

The mere allegation of fraud on information and belief is insufficient to sustain a bill for relief. There must be an allegation of facts from which the court may draw the conclusion that fraud has been committed. *Stettauer* v. *Dwight*, 54 Ill. App. 194; *Newell* v. *Bureau County*, 37 Ill. 253; *Gas Co.* v. *Higby*, 134 id. 557; *Dunaway* v. *Robertson*, 95 id. 419.

It is a familiar rule that the vendor cannot force the purchaser to pay his money and receive a defective title. *Lancaster* v. *Roberts*, 144 Ill. 213; *Wallace* v. *McLaughlin* 57 id. 53.

Whether the title is good is a question of law. *Mead* v. *Altgeld*, 136 Ill. 298.

A purchaser who bargained for a good title will not be compelled to take one which is subject to suspicion. It must be free from reasonable doubt; a title to which no reasonable man would object; one which a prudent man would

not hesitate to purchase at a full market price. It is not sufficient that the title is good, but it must be one which the purchaser feels a reasonable certainty is good. *Brown* v. *Cannon,* 5 Gilm. 174.

A purchaser of real estate cannot be compelled to take a doubtful title, which may expose him to hazard and expense of litigation. *Hoyt* v. *Tuxbury,* 70 Ill. 331.

Mr. Justice Scott delivered the opinion of the court:

We have been relieved of the necessity of examining the amended bill by statements contained in the brief and argument of plaintiffs in error to the effect that it contained "no new material allegations whatever," that no material matters contained in the original bill were omitted from the amended bill, and that "the allegations of the two bills are substantially the same, although the language may differ somewhat." If the amended bill contained no material allegations except those found in the original bill and if it omitted no averments of substantial import contained in the original bill, it is manifest that no injury resulted to the plaintiffs in error from the action of the court in striking it from the files.

The record does not show what amendment, if any, the plaintiffs in error desired to make, other than such as were offered by the amended bill which was stricken. It does not appear, therefore, that the court erred in vacating the order granting leave to amend.

Defendants in error state that the bill was demurrable because it shows that the contract of division was to have been in writing and that Mickelberry was not able to make the conveyance of the personal property to the trustee as long as the contract of division had not been reduced to writing, and that to have made the conveyance to the trustee under such circumstances would have been to lay himself open to endless litigation and danger of loss. The same position was taken by Mickelberry in his letter of May 29, and

his statement in that regard is plainly a mere subterfuge, as he had already made the conveyance to the trustee and deposited the document with the bank. When he desired to execute the bill of sale, the fact that the contract of division was not in writing occasioned no difficulty. When he wished, apparently, to avoid his contract that fact was seized upon as an excuse. The contract of May 9 does not recite or require that the contract of division was, or was to be, a written contract. The contract of May 9 refers to the contract of division as "of even date herewith," and the bill avers that the latter contract had been made by McKennan and Ziemens on May 9, prior to the making of the contract which we refer to as that of May 9. It was not necessary that the contract of division should be in writing in order that it should be of even date with the contract of May 9. Mickelberry's obligation was to convey "to Lawson D. Welch, as trustee, for the said Frank B. McKennan's use, as provided in a certain contract between the said Frank B. McKennan and the said John Ziemens of even date herewith,"—that is, of the date of May 9, 1906,—and his obligation in that respect would have been entirely satisfied by a conveyance to Welch, as trustee, for McKennan's use, "as provided in a certain contract between the said Frank B. McKennan and the said John Ziemens, of the date of May 9, 1906." Any controversy about the terms of the contract of division would have been between McKennan and Ziemens and would not have concerned Mickelberry.

It is contended that the bill does not show that the complainant McKennan complied with his part of the contract by tendering to Mickelberry an abstract of title in accordance with the terms of the contract of May 9, in that the abstract as furnished showed the existence of the liens (other than the trust deeds) amounting substantially to the sum of $5200. The bill avers that those liens were satisfied two weeks prior to the time when McKennan demanded the delivery of the title papers, and that Mickelberry,

through his attorney, Will, had knowledge of that fact. Inasmuch as Mickelberry was party to the transaction by which the abstracts were taken from the bank and wrongfully retained, we think the fact that the abstract was not made to show a satisfaction of those liens is a matter of no moment, in view of the further fact that Will, attorney for Mickelberry, knew they had been satisfied. It is also suggested that these liens were not satisfied with money furnished by the bank, in accordance with the original arrangement. This, also, is without merit. If the liens were removed it made no difference to Mickelberry by whom the money was paid.

It is also urged that there was no compliance with the contract by McKennan and Ziemens, for the reason that after the contract was made, and before McKennan demanded the exchange of the conveyances, the trust deed to Will had been filed of record. It is entirely evident, if the averments of this bill be true, that this as well as all other obstacles in the way of specifically enforcing this contract, aside from that presented by the rights of the judgment creditors, arise from collusive and fraudulent conduct of Mickelberry, Ziemens and Will, the attorney for Mickelberry, designed to make impossible a specific performance of the undertakings of the parties. A court of equity will not thus permit Mickelberry and Ziemens, by their own acts or by the acts of Will, to which they consented, to defeat the right of McKennan to have the contract carried out as made. To do so would be to allow them to take advantage of their own wrong.

So far as the judgment creditors are concerned, had Mickelberry and Ziemens acted with reasonable diligence and in good faith, the trade would, we think, have been consummated before the date when the first lien attached. Any security afforded these creditors by the Iroquois lands was obtained by them with constructive notice of the existence of the contract of May 9 and of McKennan's rights arising

thereunder. If the facts be as alleged by the bill, the trust deed to Will should be canceled and removed of record and a specific performance of the contract should be decreed; the Iroquois lands should be discharged from any burden or lien in favor of the judgment creditors, and those creditors should be given such right in the property to be transferred to Ziemens and McKennan as will give to the judgment creditors as great security for the payment of their judgments as they now have by virtue of such steps as they have taken to subject the Iroquois lands to the payment of the judgment indebtedness due them; the rights of the judgment creditors should be made to attach to the proceeds of the exchange of the Iroquois lands instead of to the equities of Ziemens and McKennan in those lands. (1 Black on Judgments, sec. 438.) For the purpose of effectually protecting the interests of the various parties to this litigation, the court may, in addition to decreeing specific performance, appoint a receiver for the property which is to be transferred to Ziemens and McKennan and may direct the sale of any or all of that property. Mickelberry should be required to account in accordance with the prayer of the bill. If Mickelberry shall be compelled to comply with his contract and to account, the court will have ample power to enforce the rights of all the parties to this controversy by directing disposition or administration of the DeWitt county properties and distribution of the proceeds of the accounting, and should retain jurisdiction for the purpose of doing complete justice between the parties. *Robinson* v. *Appleton*, 124 Ill. 276.

The decree of the circuit court will be reversed and the cause will be remanded, with directions to overrule the demurrer to the bill.

*Reversed and remanded, with directions.*