CLARENCE A. MOORE

*v.*

ANTON RECEK *et al.*

</div>

:35 LRA 426n

*Filed at Ottawa May 12, 1896—Rehearing denied October 13, 1896.*

1. FRAUD—*when false representations as to value of property are fraudulent.* Representations as to the value of property and its sufficiency as security, to constitute fraudulent misrepresentations of an existing fact material to a transaction, must be made under such circumstances as to justify the party to whom they are made in relying upon them.

2. SAME—*party must use his opportunities to verify statements as to value.* A party who has reasonable means of ascertaining the truth of a statement as to the value of property or its sufficiency as security must make use of his opportunities, and is charged with any knowledge he would have obtained had he made use of such means.

3. SAME—*what is not sufficient diligence to verify statements as to value.* One who exchanges lands for a second mortgage upon other lands does not exercise reasonable prudence in relying upon a statement as to the value of the lands or their sufficiency as security for such mortgage, where he has resided in the city in which the lands are located for many years and could easily ascertain their value, but makes no effort to learn the truth for himself.

4. SAME—*conveyance of land not set aside for fraud as against innocent purchaser.* An exchange of land for a second mortgage upon other lands cannot be set aside for fraudulent representations as to the value of the lands embraced in such mortgage, as against an innocent purchaser, in good faith, of the land given therefor.

5. NOTICE—*facts insufficient to charge a purchaser with notice of fraud.* That the abstract of title to lands shows that the consideration for

the deed to the vendor is larger than that which the purchaser is to pay for the land, is insufficient to charge such purchaser with notice of fraud in the sale to his vendor, where the price to be paid by such purchaser is not such as to excite inquiry or apprehension of fraud.

6. VENDOR AND PURCHASER—*what inquiries a purchaser of land need not make.* A purchaser of land is not bound to investigate property embraced in a mortgage transferred by his vendor in exchange for such land, and learn whether it is good security for the mortgage.

APPEAL from the Superior Court of Cook county; the Hon. JOHN BARTON PAYNE, Judge, presiding.

R. WILSON MORE, for appellant:

If one of two innocent persons must suffer a loss, he who contributed to the wrong or enabled another to commit it must bear the loss. *Gavagan* v. *Bryant*, 83 Ill. 376.

A *bona fide* purchaser for value without notice takes clear of any equities against his grantor. *Moore* v. *Hunter*, 1 Gilm. 317; *Gavagan* v. *Bryant*, 83 Ill. 376; *Robbins* v. *Moore*, 129 id. 30.

He thus takes clear of any equities in him from whom his grantor obtained the title. *Henson* v. *Westcott*, 82 Ill. 224; *Grant* v. *Bennett*, 96 id. 513; *Jenkins* v. *Pierce*, 98 id. 646; *McNab* v. *Young*, 81 id. 11; *Dickerson* v. *Evans*, 84 id. 451; *Prevo* v. *Walters*, 4 Scam. 35.

Appellant was not required to look for latent defects in the chain of conveyances, when regular on their face and apparently conveying the legal title. *Robbins* v. *Moore*, 129 Ill. 30; *O'Connor* v. *Mahoney*, 159 id. 76.

The rule applies as against an owner from whom a conveyance is obtained through fraud. *Gavagan* v. *Bryant*, 83 Ill. 376; *Pittman* v. *Sofley*, 64 id. 155.

A purchaser has a right to suppose that his grantor has a title and a right to convey, though the title may not be recorded. *Rogers* v. *Cavanaugh*, 24 Ill. 583.

SCANLAN, MCGAFFEY & MASTERS, for appellees:

It is a common, well-understood doctrine that whatever is sufficient to put a purchaser upon inquiry is good

notice of all facts which the inquiry would have disclosed. *Redden* v. *Miller*, 95 Ill. 336; *Mullette* v. *Koehler*, 141 id. 73; *Cox* v. *Milner*, 23 id. 476; *Stokes* v. *Riley*, 121 id. 166.

Whatever is notice enough to excite attention and put a party on his guard and call for inquiry is notice of everything to which such inquiry might have led, and every unusual circumstance is a ground of suspicion and prescribes inquiry. *Russell* v. *Ransom*, 76 Ill. 167; *Redden* v. *Miller*, 95 id. 345; *Crawford* v. *Railroad Co.* 112 id. 314.

Actual payment of the purchase price is essential to a purchase *bona fide*, for value. *Brown* v. *Welch*, 18 Ill. 343; *Moshier* v. *Knox College*, 32 id. 155; *Keys* v. *Test*, 33 id. 317; *Hamilton* v. *Quimby*, 46 id. 90; *Roseman* v. *Miller*, 84 id. 297.

Where one obtains the legal title to land by fraud, and under such circumstances that in equity he ought not to have it, equity will charge him as trustee for the person beneficially entitled. *Busch* v. *Dyer*, 93 Ill. 295; *Powell* v. *Jeffries*, 4 Scam. 387; *Franz* v. *Orton*, 75 Ill. 100; *Smith* v. *Wright*, 49 id. 403.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

Appellee Anton Recek filed his bill in the Superior Court of Cook county March 8, 1895, against Louis Ullrich, Mary A. Watson and appellant, to set aside a conveyance of two lots in the city of Chicago by himself and wife to said Mary Watson, charging fraud in obtaining the conveyance, and alleging that appellant, with knowledge of the fraud, had received a conveyance of the lots from said Mary Watson. Louis Ullrich was served with summons and answered the bill. Affidavit of non-residence of Mary Watson and appellant was filed, and notice of the pendency of the suit was given to them by publication. On May 9, 1895, the bill was dismissed, on motion of complainant, as to the defendants Louis Ullrich and Mary Watson. Appellant was thereupon defaulted, and a decree was entered against him requiring a conveyance

of the lots within one day to complainant, and ordering
the master to make such a conveyance in case of default
by appellant. A deed was made under this decree. On
May 27, 1895, appellant filed his verified petition, stating
that he had been a resident of Chicago for seven years,
and for the last four years had been engaged in the laun-
dry business at No. 40 South May street, Chicago, Illinois,
as proprietor of the Washington Laundry; that during
said four years his name and address had appeared in
the Chicago city directory, and for two years past his
name and place of business had appeared in the directory
of the Chicago Telephone Company; that he was the
owner in fee simple of the lots in question, and that he
had received no notice and knew nothing of the suit until
after the entry of the decree. The decree against him
was thereupon vacated and set aside. He demurred to
the bill, and the demurrer was confessed and the bill
amended. The amended bill alleged that appellee Recek
exchanged the lots for a note of $2000, secured by a sec-
ond mortgage on a lot in block 28 in Montrose, Chicago,
and that Ullrich owned said lot, but conveyed it to Mary
Watson for the purpose of having her carry out the ex-
change. The only fraud charged was that Ullrich rep-
resented to Recek, for the purpose of inducing him to sell
the lots, that the Montrose property was good security
for the second mortgage of $2000; that Recek was ignor-
ant of the value of the Montrose lot and relied upon the
statements and representations of Ullrich, who knew that
he was ignorant of such value and that the representa-
tions were false and fraudulent. Appellant answered
the amended bill, alleging that he purchased the prop-
erty in good faith and paid a full consideration therefor,
without knowledge or notice of any fraud. He also filed
a cross-bill to set aside the deed executed by the master
in chancery under the decree which had been vacated.
Upon a hearing the cross-bill was dismissed, and it was
decreed that appellant held the legal title to the lots in

trust for complainant in the original bill, and he was ordered to convey the same within three days, and in default thereof the master in chancery was directed to execute and deliver the conveyance. It was also decreed that said complainant in the original bill should release the mortgage on the lot in Montrose (now Mayfair) to said Mary Watson.

It was proved at the hearing that appellee Anton Recek owned the lots in question, located at the corner of Forty-fifth and Congress streets, in Chicago, and in pursuance of a letter from Louis Ullrich, a real estate dealer, he called upon Ullrich and entered into an agreement to exchange the lots with Mary Watson for the mortgage. A deed was executed and retained by Ullrich for about a week, when the exchange was made. Recek testified at the hearing that Ullrich told him everything was all right, and he accepted the mortgage upon Ullrich's "say so." He made no investigation in regard to the Montrose property, and when he testified had never been there, but had sent his wife out about a month previous, with another woman, to look at the property. The contract was that Recek should take a second mortgage for $2000, and it was made accordingly subject to a prior mortgage or trust deed of $1000. The evidence was that the property was worth $2300, so that it would not be security for more than $1300 of the second mortgage.

Representations as to the value of property and its sufficiency as security are very frequently exaggerated, and generally understood to be mere matter of opinion at best, and not capable of deceiving any one. A representation of that kind is not ordinarily ground for setting aside a contract. (*Banta* v. *Palmer*, 47 Ill. 99; *Noetling* v. *Wright*, 72 id. 390; *Tuck* v. *Downing*, 76 id. 71; *Schramm* v. *O'Connor*, 98 id. 539.) In order to have that effect the circumstances must be such as to justify the party to whom the representation of value is made in relying upon it. In this case there was no fiduciary relation. Nothing

was done to prevent an investigation by Recek, and no fact was proved which would take the case out of this rule. A party is not justified in relying upon such a representation when it is made concerning a matter equally within the means of knowledge possessed by both parties. If he has reasonable means of ascertaining the truth of the statement he is bound to make use of his opportunities, and is charged with any knowledge that he would have obtained if· he had made use of such means. The evidence showed that complainant had resided in the city of Chicago for about fifteen years, and that Montrose (or Mayfair) was within the city. He could have easily ascertained the value of the property which was mortgaged to him, and its sufficiency as security. It was not the exercise of reasonable prudence on his part to act upon the statement which he claims was made to him, without ·making use of his opportunities to learn the truth for himself, and it is difficult to see how equity could afford him any relief from the consequences of his own want of ordinary prudence. But if he could have the transaction set aside as against Ullrich and Mary Watson, as ·to whom the bill was dismissed, there was no evidence to justify setting it aside as against appellant, who was an innocent purchaser in good faith for about the value of the lots. As against such a purchaser the conveyance could not be set aside. *Gavagan* v. *Bryant*, 83 Ill. 376; *Robbins* v. *Moore*, 129 id. 30; *Pittman* v. *Sofley*, 64 id. 155.

When the contract was made Ullrich placed the lots in the hands of Isaac R. Mansfield, another real estate broker, for sale, and he was to receive $1500 if the lots were sold. Mansfield offered them to two other persons and to appellant. The price at which they were offered to appellant was $1535 cash, of which $35 represented Mansfield's commission, and appellant accepted the offer. A contract was drawn by which appellant was to pay $200 cash, to be held by Mansfield until after the consummation of the sale, and the balance was to be paid within

five days after the title had been examined and found
good, upon receiving a good and sufficient general war-
ranty deed, subject to certain taxes and unpaid special
taxes or assessments, and the abstract was to show title
in appellant. Appellant paid Mansfield $535, which was
endorsed upon the contract, and which covered the $200
provided for and an additional sum which he paid at the
solicitation of Mansfield to accommodate him with its
use until the contract should be closed up. An abstract
was furnished and was examined by counsel for appel-
lant, and the objections found having been removed, the
balance of the contract price was paid by appellant.

The grounds upon which it was sought to charge ap-
pellant with notice of the transaction between Ullrich
and Recek were, that when he received the abstract it
showed that the consideration for the deed from appellee
Recek to Mary Watson was $2000, or $465 more than he
was to pay for the lots; that Mansfield was his friend;
that Ullrich having desk-room in a room adjoining the
office of Mansfield, they must have both been engaged in
the fraud; that appellant paid the money to Mansfield
instead of to Mary Watson, and that the deed from Mary
Watson was recorded when the contract was made and
the $535 was paid. We think it plain that none of these
things was sufficient to show that appellant was a party
to any fraud or had any knowledge of it, or of facts suf-
ficient to put him upon inquiry. The habit of putting a
consideration in a deed larger than that in fact paid is
not uncommon among speculators and dealers in real
estate. The lots were offered to two persons before ap-
pellant bought them, who did not regard them as very
great bargains, and while they were probably a good in-
vestment at the price paid, it does not seem likely that
any person would have given $2000 in cash or good paper
for them. Appellant was not obtaining the lots at such
a price as to excite inquiry or apprehension of fraud.
Mansfield was a friend of appellant, who had purchased

through him perhaps a dozen pieces of property previously. They had at one time been employed together for a considerable time in a real estate office in Chicago. Having previously dealt with Mansfield, and being entirely responsible himself, it is not strange that he should have paid more than $200 to accommodate Mansfield, or that it should have been agreed on the other part that the abstract should show title in him when he should pay the $1000. Even if it could be said that appellant was chargeable with notice of the fact that Recek had taken a second mortgage on a lot in Montrose in exchange for his property, and that Ullrich had said it was good security, there was no evidence tending to show that he knew the Montrose property or its value, or that the statement was false. It could not be claimed that it was appellant's duty to investigate the Montrose property and learn whether it was good security for $2000 or $1300, in order to protect Recek, who did not think it necessary to make such investigation, from the possible consequences of utter indifference to the ordinary and accessible means of information as to its value. The evidence did not justify the conclusion that appellant was chargeable with participation in any fraud on the part of Ullrich, if there was any.

The cross-bill was unnecessary, since the decree in pursuance of which the master made the conveyance was vacated and set aside, and the conveyance was thereby annulled. *Martin* v. *Gilmore,* 72 Ill. 193.

The decree will be reversed and the cause remanded, with leave to appellees, if so desired, to amend the bill and make new parties.

                                        *Reversed and remanded.*