ROBERT ZEMPEL, Appellant, vs. JULIUS E. HUGHES et al.
Appellees.

*Opinion filed June 18, 1908—Rehearing denied October 8, 1908.*

1. SPECIFIC PERFORMANCE—*no inflexible rule can be laid down to control specific performance.* Each case of specific performance must largely be determined on its own special facts, but where the contract is valid in law, fairly entered into and unobjectionable in any of the features which address themselves to the chancellor's discretion, a court of equity is bound, equally with a court of law, to enforce the contract.

2. SAME—*inadequacy of consideration, not gross, is not, of itself, ground for denying relief.* The fact that the complainant in a bill for specific performance for the exchange of properties may have obtained the best of the bargain is not, of itself, ground for denying relief, unless the difference in values is so great as to afford evidence of fraud.

3. SAME—*a party's praise of his own property is not fraud.* A party dealing with his own property has a right to praise it, and his mere expression of opinion as to its value does not amount to fraud or misrepresentation such as will defeat his proceeding for specific performance, particularly where the defendant visited the property and had every opportunity to investigate its value.

4. SAME—*when contract will not be held to be forfeited for delay.* Failure of the complainant in a bill for specific performance to make his tender of performance on the day specified in the contract is not ground for treating the contract as forfeited, even though time be regarded as the essence of the contract, where the defendant intentionally avoided the complainant to prevent the tender and where the defendant himself was not ready to carry out the contract.

5. SAME—*rights under a sealed instrument may be waived by parol.* Where the defendant seeks to defeat the complainant's right to specific performance upon the ground there was an unpaid mortgage upon complainant's property about which nothing whatever was said in the contract, which was under seal, the complainant may show by parol that the defendant had agreed to let the mortgage stand and receive the money from the defendant instead of having the defendant pay it off, as he had intended doing.

APPEAL from the Circuit Court of Fulton county; the Hon. G. W. THOMPSON, Judge, presiding.

This is a bill filed March 1, 1905, in the circuit court of Fulton county, by appellant, Robert Zempel, against appellee Julius E. Hughes, for the specific performance of a contract, the substantial portions of which, so far as affects this proceeding, are as follows:

"Received of Robert Zempel the sum of $500 as part payment towards the purchase of the following described real estate, (describing the two hundred-acre farm,) which is hereby bargained and sold to the said Robert Zempel for the sum of $18,000, the balance to be paid as follows, to-wit: $7500 more to be paid on or before February 28, 1905, and in addition thereto the said Robert Zempel agrees to convey to Julius E. Hughes, for the consideration of $10,000, by good and sufficient warranty deed, the following described real estate, (describing two Chicago residence properties,) said real estate being the same shown said Hughes by said Zempel, at which date the said Julius E. Hughes agrees to deliver to the said Robert Zempel a good and sufficient warranty deed. * * * Should the title to the said two hundred acres * * * not prove good, then this $500 to be refunded; but should the said Robert Zempel fail to perform his contract on his part promptly at the time and in the manner above specified, then the above $500 shall be forfeited as liquidated damages and the above contract shall become null and void. * * * In the event that the title to the said two hundred acres, as aforesaid, should not prove good and could not be made merchantable title, then the said Hughes is to refund the said $500 * * * and this contract to be and become null and void. * * * Should the title to the real estate in Cook county, Illinois, not be found good and cannot be made a merchantable title, then the said $500 to return to said Zempel and this contract to be and become null and void. * * *

"Witness the hands and seals of the parties aforesaid this twelfth day of December, A. D. 1904.

JULIUS E. HUGHES, (Seal.)
ROBERT ZEMPEL.       (Seal.)"

Emily A. Boyer was also made a party, on the ground that Hughes had conveyed to her, as security for a loan of $7000, eighty acres of the land in question and taken from her a bond for re-conveyance. To this bill Hughes filed a demurrer, and upon leave the bill was amended, alleging, among other things, that the contract was fair and reasonable and free from fraud, and that on December 27, 1904, Hughes had delivered up possession to Zempel and taken

back a lease of the farm; also, that G. W. Hughes had an interest in the premises, and making him a party defendant. A demurrer having been sustained to the amended bill, a second amended bill was filed October 25, 1905, setting forth, among other new matters, that the interest of said G. W. Hughes was derived from a warranty deed not of record at the commencement of the suit, covering the one hundred and twenty acres not deeded to Mrs. Boyer, which deed was given as security for a loan of $6000 and was in the nature of a mortgage. A supplemental bill was filed January 24, 1906, setting forth, among other things, the filing of the G. W. Hughes deed, and that the $2200 mortgage hereafter spoken of had been satisfied since the filing of the original bill. After various other pleadings had been filed the case came to a hearing on the answers of the respective defendants and the chancellor dismissed the bill for want of equity. An appeal was thereupon taken to this court.

HARRY M. WAGGONER, and M. P. RICE, for appellant.

HARDIN W. MASTERS, and THOMAS D. MASTERS, for appellees.

Mr. JUSTICE CARTER delivered the opinion of the court:

In March, 1903, appellee Julius E. Hughes, in accordance with a contract previously made, consummated a trade and moved onto the farm in question, which he had purchased for $14,000. At that time he borrowed of Emily A. Boyer $7000, to be used as a part of the purchase money, and gave her a deed as set forth in the foregoing statement. At the same time he borrowed of his father, George W. Hughes, $6000, which he used as a part of the purchase money for the farm, and also deeded to his father part of the land as set forth in the statement. Without question, from the record before us, the deeds given to Mrs. Boyer

and George W. Hughes must be held to be mortgages given to secure said loans. The deed to Mrs. Boyer was recorded March 25, 1903. The deed to George W. Hughes was recorded March 15, 1905, after these court proceedings had been instituted.

In September, 1904, appellee Julius E. Hughes placed this farm for sale or trade in the hands of John W. Dickson, a real estate dealer living at Lewistown, the county seat of Fulton county. Dickson testifies that the price of the farm was to be $16,000 in cash or $18,000 in trade. Hughes insists that his only price was $18,000. Appellant at that time was engaged in the lumber business in Lewistown, where he had removed from Chicago some years before. Dickson talked with him about buying the Hughes farm. Dickson and Zempel, in the fall of 1904, visited the farm and examined it in company with Hughes. Shortly after this, at appellant's request, Hughes went to Chicago and looked at two residences owned by Zempel, which there was talk of turning in as a part of the trade, if one was made. Appellant's price on the two properties was $10,000. There is nothing to indicate that Hughes did not have every opportunity of seeing both places. After their return Hughes met Dickson and shortly thereafter made an offer to Zempel, which he took under consideration. A day or two later a trade was consummated in accordance with the terms of the contract set out in the foregoing statement. This contract was drawn by W. M. Fike in his abstract office in Lewistown, in the presence of appellant, appellee Julius E. Hughes, and Dickson. During the time they were in the office there was a talk between the parties of a $2200 mortgage on one of Zempel's Chicago houses. Dickson and Zempel say this was before the contract was signed. Fike is inclined to think so too, but is not certain. Hughes says it was after the contract was signed. The exact time, however, is not vital in view of the other circumstances in the case. Zempel and Dickson both testified that appellant told

Hughes of this $2200 mortgage when they first visited the farm. December 27, 1904, Hughes signed a written lease whereby he leased the farm in question from Zempel for one year from March 1, 1905, and the next day he transferred the insurance policy on the farm buildings to Zempel. December 13 he wrote a letter to a real estate firm in Chicago at whose office he had called while inspecting the Chicago property, stating that he had traded for the properties in question and was going to put them on the market after March 1, 1905, and asked what the properties were worth and what money could be loaned on them. January 29, in appellant's office, he filled out an application for a loan to this same real estate firm, and wrote them on the same date as follows: "Yours received; filled out as near as could; do the best you can about loan; see W. M. Snow; he has a loan on Eggleston avenue of $2200; he did loan $3000 on that property." The testimony is, that at the time the contract was signed appellant said there was no necessity of saying anything about the $2200 mortgage, as he would pay it off before the first of March. Dickson testified that some time in January Hughes told him he would like to have him try to arrange with appellant to let the mortgage remain on the property, to be assumed by Hughes; that he went and saw Zempel, and on his agreeing to the arrangement told Hughes of that fact. Appellant testifies that later he had a talk with Hughes about this question and told him that Dickson had made the request, and that Hughes then said he would like to have the mortgage remain unpaid on the property and that he would assume it. Zempel says the occasion of his talk was that he was about to go to Chicago to pay off the mortgage, having made arrangements so to do by correspondence, but that on account of this agreement with Hughes he allowed the mortgage to remain. The mortgage was due by its terms in May, 1905. Hughes' testimony is to the effect that he did have a talk on the subject in which Zempel requested the

privilege of allowing the mortgage to remain unpaid and to be assumed by Hughes; that Hughes said he would consider it and let him know later. Zempel went to Chicago, and after his return met Hughes, February 22, on the street in Lewistown and told him he would like to have him come in and close up that trade. Hughes replied there was no hurry. February 24, 1905, appellant's son, Robert Zempel, who was employed by his father in the lumber business, at his father's request called Hughes on the telephone and asked him to come in the next day and close up the trade; that there was no use waiting until the last minute. Hughes said he would come in the next day, and witness understood from the talk that Hughes was to come to their office, but Hughes failed to appear the next day. Dickson testified that on Monday, February 27, at appellant's request he telephoned Hughes that appellant wanted him to come in that day and meet at Fike's office and close the trade, and that Hughes said he would be in; that in the afternoon, according to that arrangement, they waited at Fike's office until between four and five o'clock, and upon telephoning Hughes he said he had been in town but had gone to meet a party at the train and did not get up to Fike's office. Dickson testified the arrangement was made that Hughes should come into town the next day and close the trade; that he and Zempel waited until one o'clock the next day for Hughes to come, and when he did not appear witness telephoned to the farm, and was told by Hughes' daughter that he had left that morning and had not returned; that at Zempel's request he then accompanied him to the bank, where Zempel drew $9740 in cash, and they drove from there to Hughes' farm in the country, where they saw the daughter and the hired man, and Zempel told them he was there to close the trade, at the same time showing his deeds for the Chicago property and the cash in question, but they could not find Hughes. Appellant's testimony agrees substantially with Dickson's on these questions, and he also

testified that he was present when his son telephoned, and was present and heard some of the conversation over the telephone that Dickson had with Hughes. Hughes himself does not deny these telephone messages. On March 1 appellant, who was then about to hunt up Hughes in order to make the tender of the deeds and money, met him on the street in Lewistown and told him he wanted to make the tender. Hughes would not stop and walked on into a drug store, where appellant followed him and made him a tender of the deeds for the Chicago property and $9740 in money, being the balance he agreed to pay over and above the $10,-000 trading price at which the Chicago properties were put in and the face of the mortgage in question, together with $40 accrued interest on the mortgage. Hughes refused to take the money. Zempel says Hughes told him he was too late, and asked if he had paid the mortgage on the Chicago property. Hughes also testifies he told Zempel that, and claims that he also said that he had been deceived as to the Chicago properties. He also claims he had stated to appellant on the street in Lewistown, several days before, that he had been deceived as to the Chicago properties, and made this same statement during one of his telephone conversations with Dickson, February 27 or 28. Zempel and Dickson both deny this part of Hughes' testimony. Hughes is corroborated by witness Stockham as to his making this statement at the time the tender was made in Loar's drug store. The druggist himself only remembered Hughes' statement with reference to its being too late. Hughes does not claim that he expressed any dissatisfaction with the trade previous to February 25, 1905, though he says he had learned, the latter part of January or the first part of February, that he had been deceived as to the value of the Chicago properties. There is testimony by certain witnesses that Hughes admitted, a few days after he had closed the contract with Zempel, that he found the Chicago properties better than he expected and that he was entirely sat-

isfied with his trade. Hughes testified that he told Zempel, as late as February 25, that he was ready to carry out the contract if Zempel would release the mortgage. According to his testimony, therefore, he based his refusal, up to that date, ostensibly at least, on this matter of title rather than on any inadequacy of value.

We have stated the facts in some detail because no inflexible rule can be laid down to control the specific enforcement of contracts in equity. Every case must necessarily depend and be determined on its own special facts. *Godwin* v. *Springer,* 233 Ill. 229; *Cohn* v. *Mitchell,* 115 id. 124; *Sugar* v. *Froehlich,* 229 id. 397; *Evans* v. *Gerry,* 174 id. 595.

Counsel for appellee Julius E. Hughes insist that time is made the essence of the contract by its terms. This is denied by appellant. Time may be made the essence of the contract by express stipulation to that effect, or it may be clearly shown by the wording. The precise phraseology is not important. The intention of the parties as expressed by the agreement controls on this question. (*Milnor* v. *Willard,* 34 Ill. 38; *Smith* v. *Brown,* 5 Gilm. 309.) In equity time is not necessarily deemed of the essence of the contract, but if it is made so by the terms of the agreement it will be treated in equity, as in law, as of the essence. But even where the contract so provides, equity, under peculiar circumstances, may not enforce a forfeiture. *Morgan* v. *Herrick,* 21 Ill. 481; *Clark* v. *Lyons,* 25 id. 90; *Andrews* v. *Sullivan,* 2 Gilm. 327.

Leaving out of consideration, for the time being, the question as to whether the failure to release the mortgage will defeat this action, and conceding that time is made the essence of this contract by its terms, (which we do not find it necessary here to decide,) appellant's failure to make the tender of the deeds and the balance of the money on or before February 28, 1905, as provided in the contract, is clearly excused by the circumstances shown by the evidence

as heretofore set out. Excepting the disputed matter as to whether the mortgage should have been released, it is very manifest that appellee Julius E. Hughes was entirely responsible for the failure of appellant to make the tender within the time provided in the contract. Appellant made every reasonable effort, in good faith, to make this tender and complete the trade. Equity will not refuse to enforce this contract because he was unable to do this on account of Hughes keeping out of his way on February 28, the last day provided for the closing of the contract, and obviously trying to avoid meeting him for the purpose of closing the contract for several days previous. (*Ebert* 'v. *Arends,* 190 Ill. 221.) Equity will not permit a party to take advantage of his own wrong actions. *McKennan* v. *Mickelberry,* 228 Ill. 460.

Counsel for appellee Julius E. Hughes insist that there is no satisfactory proof than an agreement was made to leave the $2200 mortgage unpaid on one of the appellant's Chicago properties, to be assumed by Hughes, and, even though the proof is clear and positive on this question, that the agreement, being under seal, cannot be varied in its terms or new elements introduced therein by subsequent parol arrangements, and they cite *Starin* v. *Kraft,* 174 Ill. 120, and other authorities to the same effect. Any party to a contract has a right to waive its strict compliance, and rights arising under a sealed instrument may be waived by parol. (*Ebert* v. *Arends, supra; Marshall* v. *Keach,* 227 Ill. 35; *Gibson* v. *Brown,* 214 id. 330). This subject is discussed at length and the authorities reviewed in *Kissack* v. *Bourke,* 224 Ill. 352, where it was held that the time for completing a contract similar to this might be extended by parol. The evidence in this record as to the action of both parties is all consistent with appellant's claim that he allowed the mortgage in question to remain unpaid with the intention of paying the amount of the principal and accrued interest to Hughes at the time of closing the deal, the latter con-

senting to assume the mortgage. Hughes' own talk and actions up to the time he refused to carry out his contract are entirely inconsistent with any other theory. He admits that there was a talk about this mortgage remaining on the property, and, as we have said, he was in correspondence with Chicago parties with reference to making the loan on this very property, and his letter to them stated the amount of the loan still on the real estate. Under the circumstances it would be easier for him to keep that loan than to make a new one. While the courts will indulge in no presumptions in favor of the modification of contracts by parol, (*Evans* v. *Gerry, supra,*) the evidence is so clear that there was an agreement to leave this mortgage unpaid, to be assumed by Hughes, that under the authorities just cited it must be held that appellee Julius E. Hughes waived his right to have this mortgage paid off as a condition precedent to the consummation of the contract.

A further reason exists why appellee Julius E. Hughes could not insist upon a forfeiture of the contract on the ground that it was not carried out on or before February 28, 1905, in accordance with its terms. He, himself, was not ready to perform his part at that time. He says that if the mortgage on the Chicago properties had been paid he was willing to proceed with the contract, but it is manifest from the evidence that he had taken no steps of any kind to clear off the loans from his father, George W. Hughes, and Mrs. Boyer. Neither did he attempt in any other way to perfect his title and prepare a deed of the property on or before that date. Under the authorities, if he desired to insist upon the forfeiture of the contract he himself should have been in a position to have carried out his part of it. Pomeroy on Specific Per. sec. 405; *Lancaster* v. *Roberts,* 144 Ill. 213; *Hale* v. *Cravener,* 128 id. 408; *Gibson* v. *Brown, supra.*

The further contention is made that this contract should not be specifically enforced because of inadequacy of con-.

235 — 28

sideration; that the rule is, that the right to specific performance is not an absolute one, but that the contract must be perfectly fair, equal and just and such as to commend itself to a court of equity. The proof in this record shows that the farm in question is worth from $85 to $95 an acre, or from $17,000 to $19,000. Appellant told Hughes that his Chicago properties were fairly worth $10,000, and that if the trade was not made he was going to put them on the market at that price the following spring, and Hughes claims he was told Zempel had been offered $12,000 for the properties. It appears from the record that loans of $3000 had been made on each of them. Appellant claims that the properties were approximately worth $5000 each. Hughes offered testimony of Chicago real estate men to show that they were worth approximately $3000 each. There was no evidence offered by appellant as to the value of the farm or the value of his Chicago properties.

Counsel for appellee Julius E. Hughes insist that the record shows that appellant by the contract got $4000 the best of the trade. Viewing the evidence in the light most favorable to this contention, we think the difference in value in favor of appellant was materially less than this amount. We are inclined to think, however, from the evidence in the record, that appellant may have gotten something the best of the trade. But will that alone invalidate the contract? In discussing this question in *Watson* v. *Doyle*, 130 Ill. 415, we said (p. 420) : "In *Coles* v. *Trecothick*, 9 Ves. 246, Lord Eldon, in considering the question of inadequacy of price, said: 'Unless the inadequacy of price is such as shocks the conscience, and amounts, in itself, to conclusive and decisive evidence of fraud in the transaction, it is not itself a sufficient ground for refusing a specific performance.' In *Lee* v. *Kirby*, 104 Mass. 428, which was a bill for a specific performance, it is said: 'The general rule is, that inadequacy of consideration, exorbitance of price or improvidence in the contract, in the absence of fraud, will not

constitute a defense.' If the inadequacy of price was so gross and palpable as to afford evidence of fraud, a court of equity would not lend its aid to enforce a specific performance of the contract. But such is not this case.. We think it may be inferred from the evidence that the property was worth something more than appellant agreed to pay for it; but that does not invalidate the contract. If it did, but few sales would stand, as it is no uncommon thing for property to sell for less than it is really worth." Substantially the same rule was laid down in *Ullsperger* v. *Meyer*, 217 Ill. 262. In Pomeroy on Specific Performance (sec. 193) it is stated: "The doctrine is well settled, both in England and in this country, that mere inadequacy of consideration, either in the price or in the subject matter, unaccompanied by other elements of bad faith, is never a sufficient ground for rescinding a contract on account of the hardship thereby resulting from a performance, unless the inadequacy is so excessive as to furnish satisfactory evidence of fraud. * * * When the inadequacy of consideration is such as to be satisfactory evidence of fraud, the fraud so proved is a ground for setting aside the contract." To the same effect are Waterman on Specific Per. sec. 179; Fry on Specific Per. (3d ed.) sec. 444; *Cathcart* v. *Robinson*, 5 Pet. 264; *Hamilton* v. *Hamilton*, 162 Ind. 430; 26 Am. & Eng. Ency. of Law, (2d ed.) 26. Story lays down the rule as follows: "Inadequacy of consideration is not, of itself, a distinct principle of relief in equity. The common law knows no such principle. The consideration, be it more or less, supports the contract. Common sense knows no such principle. The value of a thing is what it will produce, and it admits of no precise standard. It must be, in its nature, fluctuating, and will depend upon ten thousand different circumstances. One man, in the disposal of his property, may sell it for less than another would. He may sell it under a pressure of circumstances which may induce him to part with it at a particular time.

If courts of equity were to unravel all these transactions they would throw everything into confusion and set afloat the contracts of mankind. Such a consequence would, of itself, be sufficient to show the inconvenience and impracticability, if not the injustice, of adopting the doctrine that mere inadequacy of consideration should form a distinct ground for relief." (1 Story's Eq. Jur.—13th ed.—245.) Story, however, states that there may be such gross inadequacy of price as to show that the contract is unconscionable, and it was on this ground, among others, that this court refused to enforce specific performance in *Koch* v. *Streuter,* 232 Ill. 594. The contract in that case was so unfair, one-sided and inequitable in all its features as to furnish very strong evidence that there was fraud or imposition in its execution.

Admitting that Hughes' testimony as to all that was said to him by appellant concerning the value of the Chicago properties is true, still that would not amount to fraud or misrepresentations such as would justify a refusal to carry out this contract. A party dealing with his own property has a right to praise it, and the mere expression of opinion as to its value will not be held to be fraud or misrepresentation. (*Moore* v. *Recek,* 163 Ill. 17; *Endsley* v. *Johns,* 120 id. 469; *Tuck* v. *Downing,* 76 id. 71.) Appellee Julius E. Hughes had every opportunity that he desired to investigate the value of the Chicago properties. He himself was the moving party in the trade, or at least had as much to do with urging it as did appellant. The descriptions of the properties were correctly set out in the agreement and all the details of the trade were fully understood. We cannot find from this record any ground for charging fraud, misrepresentation or deceit against appellant. While the application for specific performance is always addressed to the sound legal discretion of the court and will not be decreed as a matter of course, yet such discretion must be exercised according to settled principles of equity, and a

court will, as a matter of course, grant the specific performance of a contract for the conveyance of land where it is valid at law, fairly entered into and unobjectionable in any of its features which address themselves to the chancellor's discretion.   In such a case a court of equity has equal authority with a court of law to grant appropriate relief and to enforce a contract.   *Fowler* v. *Fowler*, 204 Ill. 82; 4 Pomeroy's Eq. Jur. (3d ed.) sec. 1404; *Marshall* v. *Keach, supra.*

The deeds to George W. Hughes and Emily A. Boyer, as we have stated, must be held to be mortgages.   Their interests should be protected in carrying out this contract. Appellant states in his brief that he is willing to accept title to the farm subject to these encumbrances.   The amount unpaid on these loans appears from the record to be $12,000, plus accrued interest.   The $2200 mortgage on one of the properties in Chicago has been paid by appellant since the institution of these proceedings and the mortgage released. The loans to George W. Hughes and Mrs. Boyer seem to be now past due.   If they are paid in full or left as liens on the farm, to be assumed by appellant, the value of his Chicago property as set out in the contract will exceed the balance due.   For the purpose of protecting the interests of all the parties to this litigation the court may, in addition to decreeing specific performance, appoint a receiver for the Chicago property which is to be transferred to appellee Julius E. Hughes, and may direct the sale of any or all of that property in order to adjust and settle the balance between all the parties hereto.   This settlement, so far as appellee Julius E. Hughes and appellant are concerned, should be made as of February 28, 1905.   In making the accounting between them, the rent of the farm and taxes and expenses in connection therewith, the renting of the Chicago properties and the taxes and the income therefrom, should all be taken into account and a fair and equitable adjustment made.   Both appellee Julius E. Hughes and appellant

should be required to make an accounting on rents and expenses. The court will have ample power to enforce the rights of all the parties to this controversy by directing the disposal of the Chicago properties and the distribution of the proceeds after an equitable accounting as to all the interests, in accordance with the views hereinabove set forth. *McKennan* v. *Mickelberry, supra.*

The decree of the circuit court will be reversed and the cause remanded to that court for further proceedings in accordance with the views herein expressed.

*Reversed and remanded.*