(No. 13640.—Decree affirmed.)

HIRAM S. COMPTON, Appellee, *vs.* OSCAR WEBER, Appellant.

*Opinion filed February 15, 1921.*

1. SPECIFIC PERFORMANCE—*time of payment may be waived although stated to be of the essence.* Although time of payment is stated to be of the essence of a contract to sell land, if the parties treat the time clause as waived or suspended the seller cannot suddenly insist upon a forfeiture for delay in payment without giving reasonable notice to the purchaser of his intention.

2. SAME—*when failure of the purchaser to have legal tender on hand to make payment is not fatal.* Where the proposed purchaser of land has made his first payment by check, which the seller accepts without complaint, and the seller then delays the completion of the contract until near the close of banking hours on the day for final payment, the failure of the purchaser to have on hand legal tender to complete the final payment of over $22,000 is not fatal to his right to have the contract performed, where he had prepared checks of unquestioned character for the amount due and when they were refused offered to get the legal tender in Chicago and present it next day, which he did, the seller making no objection when the offer was made but later refusing to take the money.

3. SAME—*when seller must give purchaser a reasonable time to comply with contract.* Where the proposed seller of land has failed to comply with his contract to deliver an abstract showing a merchantable title within ten days before the date set for closing the sale, he must give the proposed purchaser a reasonable time to close the contract after the abstract of title is furnished.

4. SAME—*rise in value subsequent to making of contract is not ground for denying specific performance.* The fact that land has risen in value since the making of the contract for its sale does not present such a case of harshness or unfairness as authorizes denying specific performance.

APPEAL from the Circuit Court of Iroquois county; the Hon. F. L. HOOPER, Judge, presiding.

C. E. BEACH, (A. F. GOODYEAR, of counsel,) for appellant.

FREE P. MORRIS, and J. W. THOMASON, for appellee.

Mr. Justice Thompson delivered the opinion of the court:

April 21, 1919, Hiram S. Compton, appellee, and Oscar Weber, appellant, entered into a written contract whereby appellant agreed to sell and appellee agreed to buy certain farm lands in Iroquois county, Illinois. Appellee agreed to pay for the farm $25,000,—$3000 at the execution of the contract and $22,000 February 20, 1920,—and to assume a mortgage debt of $5000. Appellant agreed to deliver to appellee, on or before February 10, 1920, an abstract showing a merchantable title of record in appellant and to convey the premises to appellee by warranty deed February 20, 1920. Time of payment was made the essence of the contract, and the place for the conclusion of the contract was fixed at the First National Bank at Gilman, Illinois. Appellee paid the first $3000 by check and appellant accepted it without complaint. Before the time required by the contract appellant delivered to appellee an abstract of title to the farm. Appellee's attorney examined the abstract and found that it was not brought down to date, and that it showed breaks in the title, incumbrances that had not been released, and other serious defects, rendering the title unmerchantable. A written opinion was prepared by the attorney, and this opinion, together with the abstract, was delivered to appellant by appellee early on the morning of February 13, 1920. Appellant took the papers to his attorney and many of the objections to the title were removed. The abstract was re-submitted to appellee February 20, and an agreement was reached between the parties by which appellee agreed to accept the title and appellant agreed to permit appellee to retain $100 of the purchase price to pay expenses of a suit to quiet the title to a small part of the land. The parties agreed to meet at the First National Bank at one o'clock in the afternoon of February 20, 1920, to close the deal. Appellee was at the bank before the appointed time and remained there throughout the afternoon.

Edwin S. Herron, vice-president of the bank, prepared two deeds conveying a part of the land to appellee and a part of the land to Ross Brown, appellee's son-in-law. At two o'clock appellant had not arrived at the bank, and Herron called the office of appellant's attorney to inquire if he was there. The attorney replied that he was, and that they were preparing the deed to convey the land to appellee. Herron advised the attorney that appellee wanted the land conveyed by two deeds and that he had prepared the same. Appellant then came to the bank, which was one block away, got the deeds and took them to the office of his attorney. Appellant returned to the bank about three o'clock. Appellant says it was exactly seven minutes to three o'clock and other witnesses testify that it was shortly after three o'clock. When he arrived Herron was ascertaining the amount that appellee and his son-in-law were to pay and was preparing the checks for them. He deducted the $100 item hereinbefore mentioned and $62.25 for certain interest provided by the contract and made three checks totaling $21,837.75. One of these checks was signed by the appellee and two of them were signed by Brown. The checks were drawn on a bank in Onarga and a bank in Piper City, two near by villages. Louis H. Drolet, teller of the First Trust and Savings Bank of Kankakee, a banker of twenty-two years' experience, came to the bank with appellant, who brought the deeds properly executed and presented them, saying that he demanded payment of the $21,837.75 in legal tender. When Herron had finished preparing the checks he handed them to Brown, who offered them to appellant, but appellant refused them. Brown handed them to appellee, who offered them to appellant, but appellant again refused them, saying that he wanted payment in legal tender and that he would accept nothing else, and that he had brought Drolet with him to pass on the money to determine whether it was legal tender. He made no objection to the amount or value of the checks. Appellee and Brown had ample funds in the

banks on which the checks were drawn to pay the checks. Herron suggested that he would cash the checks and give appellant a draft for the full amount, but appellant refused to accept the draft and continued in his demand for legal tender. Herron did not have sufficient legal tender in his bank to supply appellee with the amount required, and the other bank in Gilman could furnish but $2000 in legal tender. Herron proposed to call the banks at Kankakee to see if he could get that much legal tender, but Drolet said to him there was not that much legal tender in Kankakee or any other city of ordinary size. Appellee told appellant that he would get the legal tender as soon as he could and would bring it to him the next day. To this proposal appellant made no reply. Appellee arranged with his banker to go to Chicago and get the legal tender. Twenty-two thousand dollars in legal tender was brought to Gilman shortly after ten o'clock on the morning of February 21, 1920, and taken immediately to appellant's home. Appellant was not at home and his wife told appellee that he had gone to Kankakee. Appellee told her that he had the $22,000 in legal tender for her husband and that she should tell her husband that appellee would leave it for him at the First National Bank at Gilman. He took the money to the First National Bank at Gilman and left it there on special deposit for appellant. During the afternoon appellee filed his bill in the circuit court of Iroquois county for specific performance of this contract. Issue was joined and the chancellor heard the evidence and entered his decree granting the prayer of the bill. Appellant prosecutes this appeal to review that decree.

Appellant's principal contention is that he had a right to demand payment in legal tender and that he did not waive the right nor extend the time for the payment. Conceding that he had the right under this contract to demand payment in legal tender, we think the evidence in this record clearly justifies the finding of the chancellor. Appel-

lant's only excuse for demanding legal tender is that he needed it in Kankakee the following day to close a real estate deal there. The record shows that he was not required to close the real estate deal in Kankakee until March 1 following, that the amount then due was but $6000, and that the seller had not demanded legal tender and did not want it, and that the payment, when made, was made by a bank draft. There is but one conclusion to be drawn from a reading of the evidence in this record, and that conclusion is that farm lands in this vicinity had increased in value about $25 an acre and appellant was seeking some means to avoid closing the deal. Like the great majority of people, appellant did not know legal tender when he saw it, and so he brought an expert with him for the express purpose of refusing currency that was not, strictly speaking, legal tender. The great bulk of currency used every day in business transactions is not legal tender, and appellant had reason to know that there was not $22,000 in legal tender in all the banks in the vicinity of Gilman. He made a studied effort to delay the closing of the transaction and to postpone his demand for legal tender until closing time of all city banks. He had not complied with his agreement to furnish an abstract to show a merchantable title in him until about three o'clock in the afternoon of the day the transaction was to be closed, and he could not reasonably expect appellee to be carrying $22,000 in legal tender and to keep it ready to pay him whenever he delivered a proper abstract of title and a warranty deed. It is obvious that his unusual and unexpected demand for legal tender was a sharp business trick, and a court of equity ought not to aid a trader practicing such methods unless well established legal principles demand it.

It is clear that appellee has made a conscientious effort to comply honestly with this contract and appellant has made a studied effort to make it impossible for appellee to perform. Equity does not favor the harsh remedy of for-

feiture and will lend its aid to relieve men who have acted fairly from this oppressive remedy. (*Andrews* v. *Sullivan*, 2 Gilm. 327; *Ebert* v. *Arends*, 190 Ill. 221.) Where successive acts are to be performed under a contract there is no breach by one if the precedent act has not been performed by the other. (*Lang* v. *Hedenberg*, 277 Ill. 368.) Appellant's failure to submit an abstract showing a merchantable title ten days before the date set for closing this deal makes it his duty, in equity and fair dealing, to give appellee a reasonable time to comply with his part of the contract. (*Carroll* v. *Mundy & Scott*, (Iowa,) 4 A. L. R. 811, and annotation.) Appellant accepted the first payment by check, and appellee had a right to assume that he would accept his last payment by check or by some usual and customary method of payment. Under such circumstances a court of equity will grant relief from a strict technical performance of the contract at the time stipulated, where it is plain that essential justice demands the exercise of this jurisdiction. (*Kissack* v. *Bourke*, 224 Ill. 352.) Furthermore, we are convinced that appellant waived his right to demand a forfeiture because he extended the time of payment to February 21, 1920. Appellee assured appellant that he would have the legal tender ready for him on that date, and appellant did not tell him that he would not accept it then but led him to believe that payment then would be satisfactory. Acting on this assumption the appellee took the money to the home of appellant, and when he found he was gone he left it on special deposit for appellant at the place where payment was to be made. Appellant denies that he extended the time to February 21 but admits that he waited at the First National Bank until 9:30 for appellee to bring the legal tender and that he then left for Kankakee. A party to a contract has a right to waive its strict compliance, (*Zempel* v. *Hughes*, 235 Ill. 424,) and where time is stated to be of the essence of a contract to convey land, if the parties treat the time clause as waived or suspended, one

296—27

of them cannot suddenly insist upon a forfeiture, but must then, in order to avail himself of it, give reasonable, definite and specific notice of his changed intention. (*Eaton v. Schneider,* 185 Ill. 508.) It was proper for the chancellor to consider the motive of appellant in determining whether a forfeiture should be declared. A court of equity may, in its discretion, deny the enforcement of specific performance, but there are no circumstances of an oppressive or inequitable nature attending the enforcement of this contract that would justify such action here. Subsequent rise in the value of property is not ground for refusing to enforce a contract of sale. *Brown* v. *Brown,* 274 Ill. 325.

The finding of the chancellor is in accordance with the evidence and the record is free from reversible error.

The decree of the circuit court is affirmed.

*Decree affirmed.*